IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,103

In the Matter of the Marriage of

JOANN WILLIAMS,
*Appellee*,

and

ALFONZA WILLIAMS,
*Appellant.*

SYLLABUS BY THE COURT

1.

10 U.S.C. § 1408(a)(1)(A) and (c) (2012), a provision within the Uniformed Services Former Spouses' Protection Act (USFSPA) that authorizes "any court of competent jurisdiction of any State" to "treat disposable retired pay payable to a member . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court," recognizes the jurisdiction of any state court with subject-matter jurisdiction under relevant state laws.

2.

Kansas statutes grant Kansas district courts subject-matter jurisdiction to hear divorce actions and to divide property, including military retirement benefits. As such, Kansas district courts are courts of competent jurisdiction under the USFSPA.

3.

The USFSPA does not preempt the exercise of personal jurisdiction if a military member resides in Kansas (other than because of military assignment), has his or her

domicile in Kansas, or consents to a Kansas court's jurisdiction. But, by providing limited grounds for the exercise of personal jurisdiction, the USFSPA preempts Kansas' long-arm statute.

4.

Kansas law, like federal law, recognizes a person can waive the defense of lack of personal jurisdiction by expressly or impliedly consenting to jurisdiction. A party impliedly consents by making a general appearance, by filing a responsive pleading without raising personal jurisdiction as a defense, or by not filing a motion raising the defense. Constructively, these actions waive the defense of lack of personal jurisdiction.

5.

If posttrial proceedings question the jurisdiction of the court to have entered judgment in divorce proceedings and the posttrial proceedings result in a modification of the original judgment, K.S.A. 2017 Supp. 23-2715 applies and authorizes the district court to award attorney fees.

6.

To preserve the right to attorney fees incurred in proceedings before the Court of Appeals, a party must timely file a motion under Supreme Court Rule 7.07(b) (2018 Kan. S. Ct. R. 50) and provide all the information required by the rule.

Review of the judgment of the Court of Appeals in 52 Kan. App. 2d 440, 367 P.3d 1267 (2016). Appeal from Shawnee District Court; C. WILLIAM OSSMANN, judge. Opinion filed May 18, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Michael E. Riling*, of Riling, Burkhead, & Nitcher, Chartered, of Lawrence, argued the cause and was on the brief for appellant.

*Jeffrey C. Leiker*, of Leiker Law Office, P.A., of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This case concerns a challenge to a divorce decree entered more than 20 years ago. The 1994 decree divided the husband's "army retirement benefits" as marital property, awarding the wife "25% of Husband's army retirement benefits, as her sole and separate property." The husband now asks this court to determine the district court lacked jurisdiction to divide his military retirement benefits pursuant to the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408 et seq. (2012), and to reverse the district court's award of attorney fees. We reject his arguments and affirm the district court.

## FACTS AND PROCEDURAL BACKGROUND

Joann and Alfonza Williams married in 1985. They lived together in Topeka before they married. Following their marriage, they moved as required by Alfonza's career, living in Heidelberg, Germany; Fort Campbell, Kentucky; and Illesheim, Germany. Joann moved back to Topeka on July 5, 1992. Alfonza remained in Germany until he moved in November 1992 to Fort Hood, Texas, where he was stationed.

Joann filed her petition for divorce on October 8, 1993. She requested an absolute decree, child custody and support, spousal maintenance, and an equitable division of personal property and debts. She did not specifically request a division of Alfonza's military retirement in her petition. Alfonza filed his answer on November 29, 1993. He did not object to the court's jurisdiction.

3

At the trial on January 31, 1994, Joann was represented by counsel, but Alfonza was not. However, he was accompanied by a senior noncommissioned officer. Alfonza explained the officer was present in case any questions arose concerning military matters.

In Joann's opening statement, her counsel identified Alfonza's military retirement benefits as one of the major issues. Alfonza did not voice any objection. During his cross-examination of Joann, he referenced an offer of settlement they had discussed that included giving her 20% of his military retirement. Joann's counsel again addressed her claim to military retirement benefits in closing argument. Once again, Alfonza did not object to the court's jurisdiction.

Nor did Alfonza object when the court divided the military benefits while ruling from the bench at the end of trial. The court stated:

> "I will adopt the petitioner's request for retirement that is a fair allocation of retirement, basically 25 per cent, that is half of half, and you have been in the military for almost 16 years, you have been married 8. She is entitled to have half of a half which is 25 percent. Adopt the language that is included in your decree.

> "[Joann's Counsel]: That's correct, he hasn't been in 16, he has been in—he will have approximately 15 in 1995.

> "THE COURT: Okay. The division of personal property will be pursuant to the proposed decree."

The court also found "the evidence is sufficient that the jurisdictional grounds pursuant to Kansas Statutes have been satisfied," but the court did not make any findings specific to its jurisdiction over the military benefits.

The divorce decree was prepared by Joann's counsel and signed by the court on February 23, 1994. The decree stated the court had jurisdiction over the parties and the subject matter. It went on to describe the property division:

"Husband is currently a member of the U.S. Army, and the court finds that Husband's army retirement benefits are marital property. Because of the duration of the marriage, the relative earning capacity of the parties, and the overall relative financial condition of the parties, Wife is awarded 25% of Husband's army retirement benefits, as her sole and separate property, free and clear of any right, title or interest of Husband. . . ."

Neither party appealed.

Approximately 19 years later, on March 8, 2013, Joann filed a pro se motion to garnish Alfonza's retirement. Alfonza responded on November 29, 2013, with a motion to set aside the portion of the 1994 divorce decree awarding Joann a share of his military retirement. Nowhere in this motion to set aside did Alfonza explain the procedural mechanism for setting aside a divorce decree entered almost two decades before. At oral argument before this court, Alfonza's counsel explained his view that the judgment was void for lack of jurisdiction. See K.S.A. 60-260(b)(4) (allowing relief from judgment to be filed within a reasonable time if the judgment was void); *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1024, 58 P.3d 1284 (2002) ("A judgment is void if the court that rendered it lacked subject matter jurisdiction, personal jurisdiction, or acted in a manner inconsistent with due process."). Joann has not raised any procedural objections to Alfonza's motion.

In the motion, Alfonza did not dispute "jurisdiction of the parties and the subject matter of the action, i.e., the granting of the divorce of the parties," but he argued "the Court lacked subject matter jurisdiction over the division of the Respondent's disposable

5

military retired pay." He further contended "the divisibility of such a pension by a state court, is a federal law question. Absent the granting of jurisdiction to a particular state by federal law, the state cannot divide a Servicemember's pension." Alfonza noted "[t]he jurisdictional basis of the divisibility of Servicemember's military pension is set forth with specificity at 10 U.S.C. § 1408(c)(4)," and he argued the requirements imposed by that provision had not been met. See 10 U.S.C. § 1408(c)(4).

A different district court judge from the one who presided over the divorce proceedings, after hearing testimony and arguments, rejected Alfonza's jurisdictional argument. The judge held the court presiding over the original divorce trial "did have jurisdiction to divide the military retirement benefits as set forth in Petitioner's Trial Briefs. The Respondent participated in the case by filing an answer and actively participating in the case under 10 U.S.C.A. 1401." The judge also addressed an ambiguity in the 1994 decree and modified the earlier court order to reflect what it believed was the intended equitable division. Finally, the judge awarded Joann her attorney fees.

Alfonza appealed. Joann did not cross-appeal the modification of the division. Therefore, the two overarching issues before the Court of Appeals were (1) whether the district court had jurisdiction to divide Alfonza's military retirement benefits and (2) whether the district court had the authority to award attorney fees. The Court of Appeals affirmed the district court. As to the district court's jurisdiction, the Court of Appeals concluded "that Alfonza's failure to object to the district court's jurisdiction in 1994 when the issue of the division of his military retirement was taken up at the trial of the divorce action constitutes 'consent to the jurisdiction of the court' under [10 U.S.C.] § 1408(c)(4)(C) [the USFSPA]." *In re Marriage of Williams*, 52 Kan. App. 2d 440, 452, 367 P.3d 1267 (2016). The Court of Appeals also concluded the district court had authority to award Joann attorney fees. 52 Kan. App. 2d at 453.

Alfonza's petition for review followed, and this court granted his request for review.

ANALYSIS

Alfonza's petition for review divides the two overarching issues into four questions. For purposes of our analysis, we have combined his third and fourth questions, made some slight modifications to his wording, and organized our analysis in three parts:

(1) Does the USFSPA impose limitations on a Kansas court's subject-matter jurisdiction or on a Kansas court's ability to exercise personal jurisdiction over a servicemember?

(2) Does Alfonza's failure to object during the divorce proceeding to the district court's jurisdiction equate to his "consent" to jurisdiction under the provisions of the USFSPA? and

(3) Did the district court have authority to award Joann attorney fees?

ISSUE 1: *Does the USFSPA impose limitations on a Kansas court's subject-matter jurisdiction or on a Kansas court's ability to exercise personal jurisdiction over a servicemember?*

The parties' arguments pose the question of whether the USFSPA imposes limitations on a Kansas court's subject-matter jurisdiction or its personal jurisdiction. The short answer is: personal jurisdiction. The USFSPA does not impact the underlying subject-matter jurisdiction granted by the Kansas Constitution and Kansas statutes, but it does set out conditions that must be met by a state court in order to avoid federal

preemption of matters relating to military retirement benefits. These limitations relate to the exercise of personal jurisdiction over a servicemember.

To explain this short answer, we must consider the terms of the USFSPA and Kansas law. Our standard of review when doing so is de novo. See *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 837, 367 P.3d 1252 (2016) (existence of jurisdiction is question of law subject to unlimited review); *Sierra Club v. Moser*, 298 Kan. 22, 50, 310 P.3d 360 (2013) (matters of constitutional and statutory interpretation subject to de novo review).

### 1.1    *The USFSPA and General Concepts Regarding Jurisdiction*

The USFSPA authorizes "any court of competent jurisdiction of any State" to "treat disposable retired pay payable to a member . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(a)(1)(A) and (c). But the USFSPA also makes this authorization "[s]ubject to the limitations of this section . . . ." 10 U.S.C. § 1408(c). Under the limitation relied on by Alfonza, a state court cannot enter orders about disposable retired pay of a service member "unless the court has jurisdiction over the member by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court." 10 U.S.C. § 1408(c)(4).

The parties disagree about whether this limitation addresses the district court's subject-matter or personal jurisdiction. The distinction is critical to Alfonza's arguments because "parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel. Nor can parties convey jurisdiction on a court by failing to object to its lack of jurisdiction." *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, 814, 987 P.2d 1096

8

(1999); see *Bartlett Grain Co. v. Kansas Corporation Comm'n*, 292 Kan. 723, Syl. ¶ 3, 256 P.3d 867 (2011). In contrast, a party can agree to personal jurisdiction by consent, including through constructive or implied consent such as waiver by failing to object. See *Insurance Corp. v. Compagnie des Bauxites*, 456 U.S. 694, 703, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982); *Merriman v. Crompton Corp.*, 282 Kan. 433, 444, 146 P.3d 162 (2006); see also 5B Wright & Miller, Federal Practice & Procedure: Civil 3d § 1351 (2004) (noting challenges to personal jurisdiction can be waived by express or implied consent).

As those principles apply to this case, if the limitation imposed by the USFSPA arises from subject-matter jurisdiction, Alfonza's participation in the divorce proceedings and his failure to object to the district court dividing his military retirement were insufficient to vest the district court with jurisdiction. But if the district court had subject-matter jurisdiction, Alfonza could have consented to the district court obtaining personal jurisdiction over him or waived the objection he now asserts. Some additional general principles about subject-matter and personal jurisdiction, as well as background about the USFSPA, help explain the parties' arguments and our analysis.

Personal jurisdiction, also termed *in personam jurisdiction*, generally refers to "[a] court's power to bring a person into its adjudicative process." Black's Law Dictionary 982 (10th ed. 2014). In most divorce—and other civil cases—two considerations determine whether a court can exercise jurisdiction over a person.

"First, the court must determine if Kansas statutes or case law provide a basis for the exercise of jurisdiction over a particular defendant." Second, "'the court inquires if the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment to the United States Constitution.' [Citation omitted.]" *Merriam*, 282 Kan. at 440. Alfonza has not raised a due process argument, meaning this second

9

consideration is not at issue in this appeal. Instead, his dispute is with the first consideration of whether statutes—in this case the USFSPA along with Kansas statutes—or caselaw provide a basis for jurisdiction, although he alleges it is subject-matter jurisdiction that is at issue.

Examining the statutory basis for personal jurisdiction, under K.S.A. 2017 Supp. 60-304, Kansas courts have personal jurisdiction over individuals who, among other things, can be served with process while in Kansas or who have a usual place of abode—e.g., residence or domicile—in the state. See Black's Law Dictionary 6 (10th ed. 2014) ("[A]bode" is defined as "a home; a place of residence. See Domicile."). But in a case such as this, where Joann could only initiate the divorce action by serving process on Alfonza while he and his residence were located in a different state, K.S.A. 2017 Supp. 60-308 governs the basis for a Kansas court to exercise jurisdiction. This statute, which is often called the long-arm statute, provides jurisdiction if the party performs any of the listed acts. For example, if an individual has an obligation arising from a court order regarding property settlement, jurisdiction can be asserted over the individual if he or she lived "in a marital relationship in this state notwithstanding subsequent departure from this state, . . . if the other party to the marital relationship continues to reside in this state." K.S.A. 2017 Supp. 60-308(b)(1)(H).

In addition to these statutory grounds for jurisdiction, caselaw allows a Kansas court to exercise jurisdiction over a nonresident who expressly or impliedly consents to the personal jurisdiction of a court. See *Insurance Corp.*, 456 U.S. at 703; *Merriman*, 282 Kan. at 444. This exception arises because personal jurisdiction is an individual right that can, like other such rights, be waived. *Insurance Corp.*, 456 U.S. at 703.

In contrast to jurisdiction over the parties—i.e., personal jurisdiction—subject-matter jurisdiction concerns the court's authority to hear and decide cases. *Sleeth v. Sedan*

*City Hospital*, 298 Kan. 853, 868, 317 P.3d 782 (2014). Sources of Kansas courts' subject-matter jurisdiction include the Kansas Constitution and Kansas statutes. Kan. Const., art. 3, § 6(b) ("The district courts shall have such jurisdiction in their respective districts as may be provided by law."); *State v. Dunn*, 304 Kan. 773, 811, 375 P.3d 332 (2016); *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009). Kansas district courts are generally described as courts of general jurisdiction, which means they have subject-matter jurisdiction over "all matters, both civil and criminal, unless otherwise provided by law." K.S.A. 20-301.

A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case. See *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-85, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999).

1.2    *Plain Language of 10 U.S.C. § 1408(c)(4) Discusses Personal Jurisdiction*

With that backdrop in mind, we return to the terms of the USFSPA. The plain language of 10 U.S.C. § 1408(c)(4) convinces us that it addresses personal, not subject-matter, jurisdiction. To reach this conclusion, we must interpret the statute. Several rules govern that process.

First, where there is a binding federal court decision interpreting a federal statute, we are obligated to follow that interpretation. See *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 848, 397 P.3d 1205 (2017). Here, we do not have an explicit interpretation of 10 U.S.C. § 1408(c)(4) by the United States Supreme Court, although, as we will discuss, some things may be inferred from its caselaw. So a second rule comes into play: Absent binding federal authority, it is within the power of this court to interpret the statute. The third applicable rule requires Kansas courts to "'first

11

attempt to ascertain legislative intent by reading the plain language of the statute[,] giving common words their ordinary meanings.'" *Sierra Club*, 298 Kan. at 53 (quoting *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, Syl. ¶ 3, 296 P.3d 1106 [2013]). The final applicable rule allows Kansas courts to "rely on any revealing legislative history, background considerations that speak to legislative purpose, or canons of statutory construction" only when the court determines the statutory language is ambiguous. *In re Marriage of Brown*, 295 Kan. 966, 969, 291 P.3d 55 (2012).

Given the absence of binding federal authority interpreting 10 U.S.C. § 1408(c)(4), our inquiry begins with the wording of the statute. Two phrases guide our analysis and our conclusion the USFSPA limits personal, not subject-matter, jurisdiction: (1) the phrase "court of competent jurisdiction" and (2) the phrase "unless the court has jurisdiction over the member."

### 1.2.1 *A Court of Competent Jurisdiction*

First, the USFSPA's authorization to divide military retirement benefits only applies to a "court of competent jurisdiction of any State." 10 U.S.C. § 1408(a)(1)(A). The statute itself does not define the phrase "court of competent jurisdiction."

A panel of our Court of Appeals has determined a "court of competent jurisdiction" is one with subject-matter jurisdiction that exists independently of the statute using the phrase. *Fox v. Fox*, 50 Kan. App. 2d 62, 65, 322 P.3d 400 (2014) (citing *Steel v. U.S.*, 813 F.2d 1545, 1548 [9th Cir. 1987]). A recent United States Supreme Court decision, *Lightfoot v. Cendant Mortgage Corp.*, 580 U.S. ___, 137 S. Ct. 553, 560-61, 196 L. Ed. 2d 493 (2017), confirms this interpretation.

In *Lightfoot*, the United States Supreme Court was called upon to interpret the phrase in the context of a different statute, 12 U.S.C. § 1723a(a) (2012). That statute addresses whether the Federal National Mortgage Association (Fannie Mae) may sue or be sued. Speaking generically about the meaning of the phrase "court of competent jurisdiction," the Court held it is "a reference to a court with an existing source of subject-matter jurisdiction." Hence, the statute at issue in that case, "[i]n authorizing Fannie May to sue and be sued 'in any court of competent jurisdiction, State or Federal,'" only permitted "suit in any state or federal court *already endowed with subject-matter jurisdiction* over the suit." (Emphasis added.) 137 S. Ct. at 561.

The *Lightfoot* Court rejected a party's argument that the phrase "court of competent jurisdiction" referred to a court with personal jurisdiction over the parties, but allowed for the possibility that "court of competent jurisdiction" could be interpreted to refer to both subject-matter and personal jurisdiction. 137 S. Ct. at 562. The Court's statement that the phrase does not refer to personal jurisdiction alone obviously undercuts Alfonza's argument.

Furthermore, *Lightfoot* suggests the only subject-matter jurisdiction raised by such a statute is whether a court *already* has authority over the type of case or claim. Applying that principle to the current case, we can conclude the district court had authority extrinsic from the USFSPA over the subject matter of divorce and division of marital property, including military retirement benefits.

The subject-matter jurisdiction of Kansas district courts, including the Shawnee County District Court, generally extends to actions for divorce. *Taber v. Taber*, 213 Kan. 453, 454, 516 P.2d 987 (1973); see K.S.A. 2017 Supp. 23-2701 (specifying bases on which district court shall grant decree of divorce). Furthermore, the Kansas Legislature specifically authorizes Kansas district courts to divide marital property as part of a

13

divorce. See K.S.A. 2017 Supp. 23-2802 ("A decree . . . shall divide the . . . personal property of the parties, including any retirement and pension plans . . . ."). And marital property includes military retirement benefits under K.S.A. 2017 Supp. 23-2801, which provides that Kansas district courts can treat as marital property "the present value of any vested or unvested military retirement pay . . . at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment."

Typically federal law has little bearing on divorce actions and the division of marital property because "'[t]he whole subject of the domestic relations of husband and wife . . . belongs to the laws of the States and not to the laws of the United States.'" *McCarty v. McCarty*, 453 U.S. 210, 220, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981) (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581, 99 S. Ct. 802, 59 L. Ed. 2d 1 [1979]). But in some exceptional cases, federal law preempts "'state family and family-property law'" if the state law does "'"major damage" to "clear and substantial" federal interests.'" 453 U.S. at 220.

In 1981, the United State Supreme Court concluded a state court's division of a military member's retirement pay pursuant to state community property law caused such damage and thus was preempted. *McCarty*, 453 U.S. at 211. Nevertheless, the United States Supreme Court observed that "Congress may well decide . . . that more protection should be afforded a former spouse of a retired service member. This decision, however, is for Congress alone." 453 U.S. at 235-36.

The USFSPA was passed in direct response to the United States Supreme Court decision in *McCarty.* See *Mansell v. Mansell*, 490 U.S. 581, 584-85, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989); see also 10 U.S.C. § 1408; Pub. L. 97-252, Title X, § 1002(a), Sept. 8, 1982, 96 Stat. 718, 730. Through it, Congress decided to extend more protection

14

to former spouses by providing that a "court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1).

Alfonza relies on this history to argue the USFSPA concerns subject-matter jurisdiction. Even if this conclusion can be drawn from the language in *McCarty*, Congress' decision to make the USFSPA retroactively effective on June 25, 1981, the day before *McCarty* was issued, provides "strong evidence of Congressional intent to remove all consequences of the *McCarty* decision." 2 Turner, Equitable Distribution of Property § 6:4 (3d ed. 2005). Moreover, as the Eastern District of Virginia federal court held in *Brown v. Harms*, 863 F. Supp. 278 (E.D. Va. 1994), the USFSPA does not concern subject-matter jurisdiction.

There, a German wife sought to partition the military retirement pay of her husband, who had been a member of the United States military and was an Illinois resident. The wife, after obtaining a divorce in Germany, argued the USFSPA confers subject-matter jurisdiction on federal courts to divide military pay. The court held, however, that the USFSPA did not "purport to confer subject matter jurisdiction on any court." 863 F. Supp. at 280. Instead, the USFSPA makes clear that "courts that already have subject matter jurisdiction from some proper source extrinsic to the [USFSPA], may treat a military pension as the property of the retiree or as the joint property of the retiree and the retiree's spouse, depending on the legal rules of the court's jurisdiction." 863 F. Supp. at 280-81.

We agree with this analysis and conclude, as to subject matter, Kansas district courts are courts of "competent jurisdiction" under the USFSPA and the USFSPA does not limit, but rather recognizes, that subject-matter jurisdiction.

### 1.2.2 *The Limitations of the USFSPA:  Jurisdiction over the Member*

Nevertheless, without question, the USFSPA limits state courts' authority. Again, that limitation arises from the USFSPA provision that prohibits a court from entering an order about disposable retired pay of a service member "unless the court has *jurisdiction over the member* by reason of (A) his residence, other than because of military assignment, in the territorial jurisdiction of the court, (B) his domicile in the territorial jurisdiction of the court, or (C) his consent to the jurisdiction of the court." (Emphasis added.) 10 U.S.C. § 1408(c)(4).

A plain-language reading of the statute confirms this section addresses personal, not subject-matter, jurisdiction. *Fox*, 50 Kan. App. 2d at 65. The section concerns "jurisdiction over the member," i.e., a person. And, as previously discussed, under Kansas law the reasons by which the court may have jurisdiction—residence, domicile, and consent—are traditional concepts related to personal jurisdiction. The same is true under federal law. See *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S.___, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017) ("For an individual, the paradigm forum for the exercise of general [personal] jurisdiction is the individual's domicile."); *BNSF Ry. Co. v. Tyrrell*, 581 U.S. ___, 137 S. Ct. 1549, 1556, 198 L. Ed. 2d 36 (2017) ("[A]*bsent consent*, a basis for service of summons on the defendant is prerequisite to the exercise of personal jurisdiction." [Emphasis added.]); see also 5B Wright & Miller, Federal Practice & Procedure:  Civil 3d § 1351 (2004) (noting challenges to personal jurisdiction can be waived by express or implied consent).

Thus, the USFSPA does not preempt the exercise of personal jurisdiction if a military member resides in Kansas (other than because of military assignment), has his or her domicile in Kansas, or consents to a Kansas court's jurisdiction. But, by providing

16

limited grounds for the exercise of personal jurisdiction, the USFSPA preempts Kansas' long-arm statute and, for example, its provision that allows personal jurisdiction if the parties lived in a marital relationship in Kansas and one person continues to reside in the state. See K.S.A. 2017 Supp. 60-308(b)(1)(H).

Interpreting 10 U.S.C. § 1408(c)(4) to limit Kansas' exercise of personal jurisdiction to the grounds provided in the USFSPA is consistent with the interpretations of a number of other courts that have considered the issue. For example, in *Wagner v. Wagner*, 564 Pa. 448, 768 A.2d 1112 (2001), the Supreme Court of Pennsylvania concluded "that § 1408(c)(4) refers to personal jurisdiction. For this, however, Congress chose not to use state law. Instead, it usurped state long-arm statutes and provided in § 1408(c)(4)(A)-(C) its own tests of personal jurisdiction that all state courts must apply." 564 Pa. at 458.

Other courts, including the Kansas Court of Appeals in this case, have adopted the *Wagner* court's reasoning. E.g.*, Williams*, 52 Kan. App. 2d at 446-49; *Fox*, 50 Kan. App. 2d at 66; *Johnson v. Johnson*, 386 P.3d 1049 (Okla. Civ. App. 2016). And other courts, without reliance on *Wagner*, concluded the Act addresses personal jurisdiction. E.g., *Flora v. Flora*, 603 A.2d 723, 724-25 (R.I. 1992) (concluding USFSPA provided sole basis for obtaining jurisdiction over ex-husband); *Dunn v. Dunn*, 708 S.W.2d 20, 22 (Tex. App. 1986) ("Personal jurisdiction for a partition action, with respect to military retirement benefits, is governed by [USFSPA]."); see also 21 C.J.S., Courts § 59 (2017) (10 U.S.C. § 1408[c][4] "prohibits a court from exercising personal jurisdiction over a defendant on grounds other than residence, domicile, or consent. State statutes in conflict with the federal statute are preempted as a basis of state court personal jurisdiction to the extent of the conflict."); 68 C.J.S., Partition § 76 (2017) (citing 10 U.S.C. §1408 and *Dunn*, 708 S.W.2d 20, and stating, the USFSPA "governs personal jurisdiction for a partition action with respect to military retirement benefits").

We acknowledge there is a split in authority with some courts concluding the USFSPA limits state court subject-matter jurisdiction. See, e.g., *Steel v. United States,* 813 F.2d 1545 (9th Cir.1987); *Lewis v. Lewis,* 695 F. Supp. 1089 (D. Nev. 1988); *In re Marriage of Akins*, 932 P.2d 863, 866 (Colo. App. 1997); *Allen v. Allen,* 484 So. 2d 269 (La. App.), *writ denied* 488 So. 2d 199 (La. 1986). Other courts have not committed, referring generally to the court's "jurisdiction." E.g., *Seeley v. Seeley,* 690 S.W.2d 626 (Tex. App. 1985); *Southern v. Glenn*, 677 S.W.2d 576, 583 (Tex. App. 1984).

Although these cases lend some support to Alfonza's position, we find those courts holding the limitations of the USFSPA apply to personal, not subject-matter, jurisdiction are more persuasive. The cases holding otherwise run contrary to the plain language of 10 U.S.C. § 1408. It says nothing about subject-matter jurisdiction, and, although it does not use the words "personal jurisdiction," it lists concepts related to a court's authority over a person, not the subject matter.

This position finds further support from some decisions that the United States Supreme Court declined to review. These cases indicate the *McCarty* ruling and the USFSPA's passage in response do not impact state court subject-matter jurisdiction to divide military retirement benefits in a divorce proceeding.

The first such case is *In re Marriage of Sheldon*, 124 Cal. App. 3d 371, 177 Cal. Rptr. 380 (1981). Before the district court, a husband argued *McCarty* should apply retroactively to a prior state court determination that his military pension should be considered part of the community, rather than his separate property. The California trial and appeals courts rejected his argument. 124 Cal. App. 3d at 377. The husband appealed to the United States Supreme Court, which dismissed the appeal for "want of a substantial

18

federal question." *Sheldon v. Sheldon*, 456 U.S. 941, 102 S. Ct. 2002, 72 L. Ed. 2d 462 (1982).

Subsequently, in *White v. White*, 731 F.2d 1440 (9th Cir. 1984), the federal Ninth Circuit Court of Appeals discussed the importance of the United States Supreme Court's dismissal of *Sheldon*. It noted that the husband had phrased his issue before the Supreme Court as whether the state court's judgment was "'void for lack of subject matter jurisdiction where such judgments were entered after Congress had preempted the area of law.'" 731 F.2d at 1443 (quoting 50 U.S.L.W. 3869). The summary dismissal of an appeal raising that issue, the Ninth Circuit said, "operates as a decision on the merits on the challenges presented in the statement of jurisdiction." 731 F.2d at 1443; see *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S. Ct. 2281, 45 L. Ed. 2d 223 (1975) ("'[V]otes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of a case.'" [quoting *Ohio ex rel. Eaton v. Price*, 360 U.S. 246, 247, 79 S. Ct. 978, 3 L. Ed. 2d 1200 (1959)]). Thus, the Supreme Court rejected the argument that the preemption of military retirement benefits deprives a state court of subject-matter jurisdiction to divide the retirement benefits. See 2 Turner, Equitable Distribution § 6:6.

The proceedings that followed the United States Supreme Court's decision in *Mansell v. Mansell*, 490 U.S. 581, 593, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989), also support the conclusion that 10 U.S.C. § 1408(c)(4) limits personal, not subject-matter jurisdiction. To understand the significance of what happened on remand, it helps to explain what led up to the decision and the decision itself.

In the first trial court proceeding in *Mansell*, which occurred before the United States Supreme Court's preemption decision in *McCarty*, a husband and wife reached a property settlement that awarded the wife 50% of the husband's military retirement pay,

19

including a portion of the retirement the husband had waived in order to receive disability benefits. Following *McCarty* and passage of the USFSPA, the husband filed a motion in state court to modify the settlement decree's terms. The state court denied the request without opinion. The husband pursued his appeals through the state system and all the way to the United States Supreme Court. The Supreme Court reversed the state court's decision.

The United States Supreme Court noted that, although the USFSPA authorizes state courts to treat as community property "disposable retired pay," 10 U.S.C. § 1408(c)(1), it specifically excluded any military retirement pay waived in order for the retiree to receive veterans' disability benefits, 10 U.S.C. § 1408(a)(4)(B). *Mansell*, 490 U.S. at 588-89. The Court thus held the California courts erred in dividing the excluded benefits. 490 U.S. at 589.

Nevertheless, the Court noted in a footnote that there remained a possibility the judgment could not be reversed under California state law of res judicata. 490 U.S. at 586 n.5. By acknowledging this possibility, the Supreme Court implicitly recognized the USFSPA did not limit state court subject-matter jurisdiction; if the Act had the effect of depriving a state court of subject-matter jurisdiction, then res judicata would not protect the judgment. The California state court walked through the door opened by footnote 5. *In re Marriage of Mansell*, 217 Cal. App. 3d 219, 265 Cal. Rptr. 227 (1989), *cert. denied* 498 U.S. 806 (1990).

On remand, the husband argued the judgment was void for lack of subject-matter jurisdiction. 217 Cal. App. 3d at 227. The California court rejected the husband's argument that *McCarty* and *Mansell* concerned subject-matter jurisdiction over retirement or disability pay. 217 Cal. App. 3d at 228. Instead, the court characterized the issue in *McCarty* as whether a state could divide military retirement benefits pursuant to

20

state, rather than federal, law. The court then concluded subject-matter jurisdiction vested when the lower court entered its final decree. 217 Cal. App. 3d at 229. It continued: "While under the reasoning in *McCarty* the court should have applied federal rather than state law in determining the character of the retired pay, it was within the court's jurisdiction to make that characterization, right or wrong. The judgment was therefore not void for want of subject matter jurisdiction." 217 Cal. App. 3d at 229. The California court concluded that to the extent the United States Supreme Court decision "is the law of the case herein, *it has no impact on the question of subject matter jurisdiction*." (Emphasis added.) 217 Cal. App. 3d at 229. The husband appealed again to the United States Supreme Court, but the Court denied review.

The United States Supreme Court's footnote in *Mansell* and the subsequent proceedings eliminate "any remaining possibility that the holdings in *McCarty* and *Mansell* are rules of subject matter jurisdiction." 2 Turner, Equitable Division § 6:6.

Our review of this history further confirms our conclusion that the USFSPA does not deprive a state court of subject-matter jurisdiction. Rather, it preempts state long-arm jurisdiction, limiting the exercise of personal jurisdiction to the state of the service member's residence, other than because of military assignment; of the service member's domicile; or where the service member consents to the jurisdiction of the court.

Accordingly, the district court had subject-matter jurisdiction over this case in 1994. We now turn to Alfonza's argument that the court's exercise of personal jurisdiction required affirmative consent to the division of his military retirement benefits.

21

ISSUE 2: *Does Alfonza's mere failure to object during the divorce proceeding to the district court's jurisdiction over his retirement benefits equate to his "consent" to jurisdiction under the provisions of the USFSPA?*

As we just listed, there are three routes to personal jurisdiction: residence, domicile, and consent. Neither party appears to argue that Alfonza resided in Kansas at the time of the original divorce proceeding. Joann presented facts to support personal jurisdiction based on domicile at the district court, but she did not raise the argument in her appellate briefing. Therefore, we deem this argument inadequately briefed and consequently abandoned. See *State v. Logsdon*, 304 Kan. 3, 29, 371 P.3d 836 (2016). This leaves consent as the only basis for the exercise of personal jurisdiction over Alfonza.

Alfonza argues he did not consent to the division of his military retirement benefits. He asserts the plain meaning of "consent" is not "fail to object." Put differently, Alfonza argues "consent" requires express consent and does not encompass the notion of implied consent. He further argues the consent must be specific to division of the military retirement benefits and not generally to the court's exercise of jurisdiction over a divorce.

We now consider the meaning of "consent" as used in the USFSPA. We begin by noting the USFSPA does not define the term. See 10 U.S.C. § 1408(c)(4); see also 2 Turner, Equitable Distribution of Property § 6:4.

Nevertheless, when interpreting the statute, "we presume that 'Congress is aware of existing law when it passes legislation.'" *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. ___, 134 S. Ct. 736, 742, 187 L. Ed. 2d 654 (2014) (quoting *Hall v. United States*, 566 U.S. 506, 132 S. Ct. 1882, 1889, 182 L. Ed. 2d 840 [2012]). Furthermore, courts "'normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent.'" *Ryan v. Gonzales*, 568 U.S. 57, 66, 133 S. Ct. 696, 184 L.

22

Ed. 2d 528 (2013) (quoting *Merck & Co. v. Reynolds,* 559 U.S. 633, 648, 130 S. Ct. 1784, 176 L. Ed. 2d 582 [2010]). So to better understand the meaning of "consent" as used in the USFSPA, we consider the state of the law when the USFSPA was passed.

By that point in time, the United States Supreme Court had recognized a "variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court." *Insurance Corp.*, 456 U.S. at 703 (citing *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S. Ct. 411, 414, 11 L. Ed. 2d 354 [1964]; *Petrowski v. Hawkeye-Security Co.*, 350 U.S. 495, 76 S. Ct. 490, 100 L. Ed. 639 [1956]; *Victory Transport Inc. v. Comisaria General de Abastecimientos y Transportes*, 336 F.2d 354 [2d Cir. 1964]; 2 J. Moore & J. Lucas, Moore's Federal Practice ¶ 4.02[3] n.22 [1982]).

Two of these legal arrangements or circumstances are significant in this case. First, "an individual may submit to the jurisdiction of the court by appearance." 456 U.S. at 703 (citing *McDonald v. Mabee*, 243 U.S. 90, 91, 37 S. Ct. 343, 61 L. Ed. 608 [1917]). Second, the Court had "upheld state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures." 456 U.S. at 704 (citing *Adam v. Saenger*, 303 U.S. 59, 67-68, 58 S. Ct. 454, 82 L. Ed. 649 [1938]; *Chicago Life Ins. Co. v. Cherry*, 244 U.S. 25, 29-30, 37 S. Ct. 492, 61 L. Ed. 966 [1917]).

Thus, federal law at the time the USFSPA was enacted in 1982 recognized consent to jurisdiction could be express or implied (also referred to as constructive). In particular, precedent recognized implied consent to personal jurisdiction by participating in state court proceedings. Congress is presumed to have known this at the time it enacted the USFSPA, and we further presume Congress meant to incorporate that meaning unless it

23

stated otherwise. See *Mississippi ex rel. Hood*, 134 S. Ct. at 742. Congress did not express a contrary intent when it adopted the USFSPA.

These presumptions are also valid under Kansas law regarding personal jurisdiction. Kansas law, like federal law, recognizes a person can waive the defense to personal jurisdiction by making a general appearance or by filing a responsive pleading without raising personal jurisdiction as a defense. See K.S.A. 2017 Supp. 60-212(b)(2), (h); Fed. R. Civ. P. 12(b)(2), (h). As this court stated in *Haley v. Hershberger*, 207 Kan. 459, 465, 485 P.2d 1321 (1971): "The defense of lack of jurisdiction of the person is waived only when it is not raised by motion or in the answer itself." This waiver occurs because K.S.A. 2017 Supp. 60-212(h) explicitly states: "A party waives any defense listed in subsections (b)(2) [lack of personal jurisdiction] by: . . . (B) failing to either: (i) Make it by motion under this section; or (ii) include it in a responsive pleading." Alfonza did neither. Essentially, through silence, he waived his objection to the court's jurisdiction and constructively consented to the court's jurisdiction.

A number of courts have held that a state court may exercise personal jurisdiction over a military member who appears without expressly contesting personal jurisdiction. *Davis v. Davis*, 230 Ariz. 333, 337, 284 P.3d 23 (Ariz. Ct. App. 2012) (citing *Gowins v. Gowins*, 466 So. 2d 32, 36 [La. 1985]); *Judkins v. Judkins*, 113 N.C. App. 734, 737, 441 S.E.2d 139 [1994]; and *Kildea v. Kildea*, 143 Wis. 2d 108, 113-14, 420 N.W.2d 391 [Wis. Ct. App. 1988]).

In *Davis*, the Arizona Court of Appeals considered the husband's acts that affirmatively invoked the lower court's jurisdiction, including making a general appearance, appearing in person and through counsel, requesting a special master to determine the status of his retirement, and asking for clarification of the special master's role and payment of the special master's fees. And in *Allen*, 484 So. 2d 269, even though

the court treated the USFSPA as a limitation on a Louisiana court's subject-matter jurisdiction, the court held a military spouse, by answering the divorce petition filed by his wife in Louisiana, waived all objections to the jurisdiction of Louisiana courts. This waiver was sufficient to give the court jurisdiction over the wife's subsequent petition to partition community property, including a share of the husband's military retirement pay. Finally, in *Kildea*, the court rejected a husband's "argument that although personal jurisdiction was generally present, the court lacked the specific jurisdiction to divide the pension because he did not agree to the division" because it was "not supported by the clear language of the statute." 143 Wis. 2d at 113.

Although implied consent to personal jurisdiction—or, as stated somewhat differently, constructive waiver of the defense—by failing to promptly raise the objection is well-established, some courts have nonetheless imposed a more restrictive reading of consent as used in the USFSPA. Alfonza relies primarily on two cases for this position. The first is the Pennsylvania Supreme Court's decision in *Wagner*, 564 Pa. 448.

The *Wagner* court recognized that a court with personal jurisdiction in an initial divorce may, in some circumstances, bind the parties "by subsequent orders over connected matters." 564 Pa. at 459. The court also acknowledged the time-honored rule that "the failure to file a timely objection to personal jurisdiction constitutes, under the Federal Rules of Civil Procedure and comparable state rules, a waiver of the objection." And the court recognized that the USFSPA gave no indication Congress intended to preclude the usual waiver rules. 564 Pa. at 461. Nevertheless, the *Wagner* court concluded a different rule should apply to military retirement based on the USFSPA. 564 Pa. at 459-62.

The *Wagner* court read the USFSPA to require consent specifically to division of the military retirement benefits. Under the facts of that case, it found it inappropriate to

hold the military member to the usual rules concerning timing of the objection because the case had proceeded for more than two years without any filing indicating military retirement benefits were among the property to be divided in the divorce action. Once it became clear the military retirement benefits were at issue, the military member objected to the trial court's exercise of personal jurisdiction over the retirement. The *Wagner* court gave effect to that objection by interpreting the USFSPA's consent requirement to apply specifically to the division of military retirement benefits, not just jurisdiction over the proceeding. 564 Pa. at 463.

In the second case Alfonza relies on, *Flora*, 603 A.2d 723, the Rhode Island Supreme Court rejected a wife's argument that the husband gave implied consent to the division of his military retirement benefits. There, the parties obtained a final judgment of divorce in 1983. The decree did not provide for distribution of the husband's military pension, and the issue did not appear to be litigated at all in the initial court proceeding. Five years later, the wife sought to amend the divorce decree to address the military pension. The Rhode Island Supreme Court rejected implied consent as a theory for asserting jurisdiction over the husband, who had filed for divorce in the original action but had been domiciled in California since 1982. 603 A.2d at 723-25.

We are not persuaded that either *Wagner* or *Flora* help Alfonza. Both cases involved claims to military retirement benefits that were only asserted years after the cases began. In both instances, the courts' decisions appeared motivated by the delay and the fact that military retirement benefits were not at issue when the military members originally consented to jurisdiction. Alfonza, however, failed to raise the defense in the original trial proceeding in which the claim for military retirement benefits had been asserted. Thus, even if we were to interpret 10 U.S.C. § 1408 to require consent once the claim had been made, Alfonza would not prevail. See K.S.A. 2017 Supp. 60-212(h).

Unlike the military members in *Wagner* and *Flora*, Alfonza waited 19 years to state any objection.

Moreover, we are not persuaded that the USFSPA requires specific consent to the consideration of retirement benefits. 10 U.S.C. § 1408(c)(4)(C) states the service member must "consent to the jurisdiction of the court." It does not say he or she must consent to the court dividing military retirement benefits. Under the circumstances of this case, a Kansas court with personal jurisdiction over an individual has subject-matter jurisdiction to divide marital property, including military retirement benefits.

In summary, we conclude the traditional rules of personal jurisdiction apply, including implied consent and waiver of objections. As those rules apply in this case, we hold the district court had personal jurisdiction over Alfonza in 1994 based on implied consent, which was demonstrated by his active participation in these proceedings. He filed an answer to Joann's complaint, which sought division of marital property. And under Kansas law marital property includes any military retirement benefits.

ISSUE 3: *Did the district court have authority to award attorney fees?*

In the district court, Joann was awarded attorney fees totaling $6,092. Alfonza's briefing focuses on the district court's authority to award attorney fees, not the amount. In addition, Alfonza conceded at oral argument that his only dispute related to the district court's authority. We therefore deem abandoned any argument about the amount of attorney fees and instead turn our attention to Alfonza's argument that the court was not authorized to award attorney fees in this case. See *Logsdon*, 304 Kan. at 29.

Alfonza challenges the district court's authority on two theories. The first (issue number three in his petition for review) is dependent upon us agreeing with Alfonza that

27

the district court lacked jurisdiction under the provisions of the USFSPA. Because we have rejected his jurisdictional arguments, we need not further address this issue. Second, in issue number 4 in the petition for review, Alfonza argues Joann is not entitled to attorney fees because her action was one for garnishment, and the garnishment statute does not authorize attorney fees in this case.

As Alonfza argues, "a Kansas court may not award attorney fees unless a statute authorizes the award or there is an agreement between the parties allowing attorney fees, . . . [and] [t]he question of whether a court has the authority to award attorney fees is a question of law over which an appellate court has unlimited review." *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013).

The district court did not identify the statutory basis for its award of attorney fees in its November 25, 2014, order. It did mention a letter dated October 8, 2014, which might cite a statute. But that letter is not a part of the record on appeal.

Alternatively, the district court might have felt the source of the authority was obvious because this case originated with the 1994 petition in the Williams' divorce, which initiated proceedings that were governed by the Kansas Family Law Code. The Kansas Family Law Code authorizes Kansas courts to award attorney fees in divorce, separate property, or annulment cases "to either party as justice and equity require." K.S.A. 2017 Supp. 23-2715; see also K.S.A. 2017 Supp. 23-2711; 1 Elrod, Kansas Law and Practice:  Kansas Family Law § 9:38 (2017-18 ed.).

Alfonza, however, presents a third option and asks us to treat this action as one for garnishment based on Joann's initial filing that reinitiated the proceedings almost two decades after the divorce was granted. Joann used a form available from the Shawnee County district court. She completed the form identifying the case number from the

original divorce proceeding and indicating the purpose was "[t]o Pertession [*sic*] for Garnishment of Retirement." Her motion stated, "I was awarded in the divorce 25% of his retirement by the State of Kansas. . . . He is not willing to give me any of the money that I was awarded." This is the extent of her substantive request. Joann did not include any of the information required for a court to issue an order of garnishment. See K.S.A. 2017 Supp. 60-731.

Joann proceeded pro se at the time she filed this motion. Therefore, her motion should be liberally construed. See *Sperry v. McKune*, 305 Kan. 469, 489-90, 384 P.3d 1003 (2016). Liberal construction allows courts to grant relief based on the facts alleged, i.e., "the substance of the pleading controls over its label." *In re Estate of Broderick*, 34 Kan. App. 2d 695, 701, 125 P.3d 564 (2005) (citing *Jackson v. State*, 1 Kan. App. 2d 744, Syl. ¶ 3, 573 P.2d 637 [1977], *rev. denied* 225 Kan. 844 [1978]).

Even construing this motion liberally, Joann did not actually garnish any funds or come close to procedurally succeeding in doing so. Moreover, Alfonza did not respond on these procedural grounds. Instead, Alfonza argued the divorce court had lacked the authority to enter judgment in light of the jurisdictional requirements of the USFSPA. And the district court necessarily considered all the arguments before it and ultimately entered an order about the division of the parties' marital property, not about whether Joann had properly attempted to execute on a judgment. As such, the case on which Alfonza relies, *Vanover v. Vanover*, 26 Kan. App. 2d 186, 987 P.2d 1105 (1999), is distinguishable. Given that, we need not decide today whether *Vanover* was correctly decided.

In *Vanover*, during initial divorce proceedings, the wife agreed to defer enforcement of the portion of the divorce decree awarding child support and maintenance until the husband had concluded litigation against his former employer. Subsequently,

when the wife filed a garnishment, the husband argued the judgment had become dormant and was therefore uncollectible. The trial court rejected that argument and ordered payment from the garnished funds to the wife.

In contrast, in the current case, the issues were broader than those raised by an attempted seizure of property through a garnishment—that is, the question of whether a party timely sought to collect funds awarded in a judgment. Alfonza challenged the underlying judgment by attacking jurisdiction, and his arguments resulted in a modification of the divorce decree. Given that, the substance of the proceedings did not deal with an order of garnishment and collection but with the division of property. Consequently, the district court could, and apparently did, look to the statutory code governing the judgment, the Kansas Family Law Code, to determine whether attorney fees are allowed. And a statute in the Code, K.S.A. 2017 Supp. 23-2715, authorized the district court to award the attorney fees.

After oral arguments before this court, a new attorney fee issue arose when Joann filed a motion requesting attorney fees incurred in proceedings before the Court of Appeals. Alfonza objects on a number of grounds, including Joann's failure to comply with Supreme Court Rule 7.07(b) (2018 Kan. S. Ct. R. 50). Among other things, the rule requires the motion to be filed no later than 14 days after oral argument or the date of the appellate clerk's letter assigning the case to a nonargument calendar. In addition, the rule requires an affidavit "attached to the motion specifying:  (A) the nature and extent of the services rendered; (B) the time expended on the appeal; and (C) the factors considered in determining the reasonableness of the fee. (See KRPC 1.5 Fees)." (2018 Kan. S. Ct. R. 51).

While Alfonza argues Joann's motion was untimely, this issue involves a complicated procedural morass we need not unravel because the motion fails on other

grounds. An affidavit did not accompany Joann's motion. A copy of a billing statement from Joann's counsel was attached, but it was unsworn and did not address the factors of the Kansas Rules of Professional Conduct (KRPC) 1.5(a) (2018 Kan. S. Ct. R. 294). Because of these failures, we deny Joann's motion for attorney fees incurred in proceedings before the Court of Appeals.

CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is affirmed. The district court's divorce decree, as modified by the district court's November 25, 2014 order, is affirmed.

Affirmed.

ROSEN, J., not participating.
JEFFRY L. JACK, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Jack was appointed to hear case No. 113,103 vice Justice Rosen under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.