NOT DESIGNATED FOR PUBLICATION

No. 120,615

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHARLES CHRISTOPHER LOGSDON SR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed July 10, 2020. Reversed in part, dismissed in part, and remanded with directions.

*Kristen B. Patty*, of Wichita, for appellant, and *Charles Christopher Logsdon Sr.*, appellant pro se.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER and BRUNS, JJ.

PER CURIAM:  Charles Christopher Logsdon, Sr. appeals the district court's denial of his K.S.A. 60-1507 motion. In the district court he attacked his convictions for murder and several other serious crimes on a broad front. But on appeal, his counsel has limited the fight to one issue. He claims the failure of his trial counsel to call 15 witnesses in his defense establishes that his attorneys were ineffective. Given the record we have, we remand this issue for further fact-finding. After dealing with that issue, we will address several uncounseled allegations raised by Logsdon in his pro se brief.

1

Logsdon contends that his trial attorneys were ineffective for their failure to adequately investigate, interview, and call 15 witnesses he claims were necessary to his defense. Logsdon argues their testimony would:

- be relevant to his alibi;
- show that he did not have access to the murder weapon;
- lead to other possible assailants; and
- refute other witnesses' claims that he talked about undisclosed details of the murder while in jail.

We hold that this issue requires the presentation of evidence and cannot be summarily dismissed. We explain our reasoning.

First, a review of the law is helpful. One of the three options a district court has when handling a K.S.A. 60-1507 motion is to determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. Counsel is often appointed for the prisoner, as here, and both parties present arguments to the court. If the court determines there is no substantial issue, the court may deny the motion. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018). That is what the court did here.

For our part, when a district court denies a motion based only on the motion, files, and records after a preliminary hearing, we are in the same position as the district court to consider the merits. Thus, our standard of review is de novo. *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

So, after giving a brief case history, we will show why the district court needs to take evidence and consider the effectiveness of Logsdon's trial attorneys and how they dealt with the many witnesses he mentions in his motion.

2

*Case History*

Logsdon was convicted of intentional first-degree murder and several other serious felony crimes based on circumstantial evidence. The sentencing court imposed a life sentence with a minimum term of 50 years. Logsdon appealed and asked the Kansas Supreme Court to reverse his convictions and vacate his hard 50 life sentence. *State v. Logsdon*, 304 Kan. 3, 6-7, 371 P.3d 836 (2016). The court affirmed his convictions but vacated his hard 50 life sentence and remanded the case for resentencing. 304 Kan. at 7, 42. On remand, the district court sentenced Logsdon to a mandatory 25-year life sentence on the murder conviction but did not disturb the total consecutive term of 278 months for the remaining convictions. Logsdon did not appeal.

Logsdon filed this K.S.A. 60-1507 motion, raising many claims that he thought would warrant a new trial. They can be grouped into four general areas: prosecutorial misconduct, jury misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. In its written opinion, the district court carefully addressed each area raised by Logsdon and denied him any relief without taking any evidence on the motion.

When it denied habeas corpus relief, the court offered this conclusion:

"To summarize only the evidence consisting of petitioner's inculpatory statements, nine witnesses testified petitioner provided details of the murder that were not known publicly; two witnesses testified petitioner confessed to the murder; and a video in the Ford County jail showed petitioner acting out the murder."

But in his brief to this court, Logsdon appeals only the district court's findings and conclusions regarding his allegation that his trial attorneys were ineffective for their failure to adequately investigate, interview, and call witnesses he "deemed necessary to

3

his defense." He lists 15 individuals and reiterates claims from his motion regarding the importance of each. Generally, he claims the individuals' testimony would have been relevant to his alibi, he did not have access to the murder weapon, and there were other possible assailants. He also claims some of the named individuals were cellmates who could have testified that he did not brag about committing the murder. Here is his list along with his allegations:

- Jeremy Frischenmyer—an alibi witness who was with Logsdon on the night of the murder. He contacted Logsdon's attorneys to set up a meeting about his testimony.
- Travis Lee Waters—he did not meet Logsdon until 3 or 4 weeks after the murder; thus, Logsdon could not have accessed Waters' Colt .38 revolver to commit the crime.
- Kay Lynn Waters—Logsdon had never been to her home in Nebraska prior to July 1, 2011.
- Vicky Ellen Ray—the day before the murder, she heard a woman angrily yelling. She saw a white male in a gray car in the woman's driveway.
- Amy B. Aoun—she heard a woman (possibly the victim) screaming angrily on the phone.
- Julie Gail Feldkamp—she heard a female yelling on the phone, which was not the first time she had heard somebody yelling from outside of the house.
- Tim Black—he was suspicious about a white male who had been lingering at the victim's garage sale about a month before the murder.
- Kathleen Perez—on the day of the murder, she saw a slender white male with "blondish" hair, and a white pick-up and a "reddish" colored van parked by the trees located just north of the victim's property.
- William Bill Logsdon—he saw a vehicle with a male sitting in the driver's seat parked on the victim's street several times.
- Dorothy Perry—about a month before the murder, she saw someone run from

the trees on the victim's street and get into a gray van, nearly hitting her as he drove away.

- Jennifer Ricker—the victim's next-door neighbor, saw a white male with sandy blonde hair in her backyard about a week before the murder.
- Bradley Kulker—Logsdon's cellmate in the Ford County jail, could testify that Logsdon told him he was innocent and had nothing to do with the murder.
- Mike Pelsor, John Cantu, and Justin Gleason—Logsdon's other cellmates— could testify that Logsdon was not bragging about committing the murder.

When the district court addressed this issue, it basically held that because there was a massive investigation of this murder where there were over 500 interviews by the police and 15 suspects, these claims were insignificant. The judge just could not see how the outcome of the trial would have been different. The court offered no further explanation for its ruling.

We must ask, how does the judge know that their testimony would not change the outcome of the trial until there is some evidence on what that testimony would be, and an explanation why it was not investigated or presented? We are in the same position as the district court in considering this motion and we cannot answer those questions.

We realize the judge ruling on this motion was the same judge that conducted the trial. Her opinion is guided by that experience. But we are given no findings on why the testimony of these witnesses would be ineffective. We have only been given a conclusion.

For its part, the State has taken great pains in its brief to explain why each witnesses' testimony would make no difference in the outcome of the trial. But these are the arguments of an advocate—not the findings of the district court that we can evaluate to see if they are supported by substantial competent evidence. And we must point out the

5

issue here is the *effectiveness* of defense counsel. Was an investigation made about each witness? Did the attorney's professional judgment call for a different action? Is this merely harmless error? With this record, we cannot answer these questions.

For these reasons, we reverse and remand to the district court for an evidentiary hearing on these witnesses. We will turn now to the other issues raised by Logsdon in his pro se brief.

In Logsdon's supplemental brief he claimed that his trial counsel was ineffective for failing to:

- make reasonable investigation into his codefendant, Billy Craig;
- join Craig's motion to suppress several of his statements made during the 2011 police investigation;
- make reasonable investigation into Justin White, one of the State's witnesses; and
- effectively conduct a "proper cross-examination" and inquire if White received a deal for information and his testimony.

Since we are remanding the issue of effectiveness of trial counsel for an evidentiary hearing, Logsdon may raise these questions at that time. But we must point out that those points above are not the only allegations made by Logsdon in his 84-page brief. He raises additional points.

Logsdon also alleges on appeal that the prosecution committed "misconduct" by:

- failing to disclose material evidence: "the truth about co-defendants [*sic*] Billy Craig's interrogations and his statements" and information about plea negotiations with White; and
- allowing law enforcement to threaten Craig during the investigation.

In considering these claims, we hold that claims of prosecutorial misconduct should be questions in a direct appeal, not a motion for habeas corpus relief.

Logsdon also claims that White gave false testimony at trial—facilitated by the prosecutor—that he received nothing of value for his statements. However, Logsdon's contention on White's testimony appears to be rooted in his interpretation of that testimony—meshing White's testimony about his statements to law enforcement with his testimony at trial.

He claims that White lied when he said he did not receive a benefit for his testimony at trial. In fact, White's testimony was that he did not receive any benefit before making statements to law enforcement about his interactions with Logsdon in jail. Under cross-examination, defense counsel began to impeach White's direct testimony on this point, but the prosecutor objected and clarified:

> "And Judge, I guess I'm going to voice an objection. I want to make sure I understood this right. The question involved whether [White] received anything of value for his statements to the *detective*. The question being asked kind of changed the facts to if you received anything of value in return for your *testimony*." (Emphases added.)

White acknowledged he received benefits including a departure sentence in his own criminal matter based in part on the substantial and compelling reason that he agreed to testify at Logsdon's trial. Logsdon misinterprets the testimony. The record shows White did not lie.

Logsdon's claim that the prosecutor committed misconduct by allowing law enforcement officers to threaten Craig is a conclusory contention. He fails to meet his burden to establish his entitlement to an evidentiary hearing on this claim. See K.S.A. 2019 Supp. 60-1507(b); *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

Logsdon also objects to:

- the criminal complaint against him and a jury instruction because they stemmed from two statements Craig made to law enforcement in August 2011 during the investigation;
- portions of the trial record on appeal;
- the voluntariness of Craig's confession as a violation of Logsdon's right to due process under the 14th Amendment to the United States Constitution.

We dismiss the first two points because he fails to explain why these issues were not addressed in his direct appeal. See Supreme Court Rule 183(c)(3) (2020 Kan. S. Ct. R. 223). And finally, he cited no authority in support of his arguments. Issues not adequately briefed are considered waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

On his final point about the voluntariness of Craig's confession, Logsdon lacks standing to contest whether another defendant's confession was voluntary. See *KNEA v. State*, 305 Kan. 739, 746, 387 P.3d 795 (2017).

To sum up, we dismiss the issues raised in Logsdon's pro se brief except for those we first mentioned that dealt with the effectiveness of trial counsel. On remand, the district court must also take evidence concerning the attorneys dealing with the 15 witnesses and make appropriate findings concerning trial counsel's effectiveness.

Reversed in part, dismissed in part, and remanded with directions.