NOT DESIGNATED FOR PUBLICATION

No. 123,297

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES MORRIS,
*Appellant*,

v.

SHILLING CONSTRUCTION CO. INC. and
MIDWEST BUILDERS CASUALTY MUTUAL COMPANY,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed December 3, 2021. Reversed and remanded with directions.

*Mitchell Rice*, of Mitch Rice Injury Law, LLC, of Hutchinson, for appellant.

*Jodi J. Fox* and *Jackson D. Wagner*, of McAnany, Van Cleave & Phillips P.A., of Kansas City, for appellees.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: James Morris appeals the Workers Compensation Board's (Board) finding that his electrocution while working for Shilling Construction Co. Inc. (Shilling) caused him a body as a whole (BAW) impairment rating of 6.5%, entitling him to 26.98 weeks of permanent partial general disability under K.S.A. 2020 Supp. 44-510e(a)(2)(A) at a rate of $521.73 per week for a total award of $14,076.28. Morris argues that the Board wrongly believed that K.S.A. 2020 Supp. 44-510e(a)(2)(B)'s plain language required it to use the impairment ratings that his doctors gave him under the Sixth Edition

1

of the American Medical Association (AMA) Guides (Sixth Edition) when determining the extent of his permanent partial general disability benefits. And he contends that based on this errant belief, the Board mistakenly ignored the impairment ratings his doctors gave him using the Fourth Edition AMA Guides (Fourth Edition) when it awarded him permanent partial general disability benefits. On that basis, Morris asks us to reverse the Board's order and remand with directions that it redetermine his permanent partial general disability benefits based on a correct calculation of his BAW impairment rating.

On the other hand, Shilling and its insurance company Midwest Builders Casualty Mutual Company (hereafter referred to collectively as Shilling) take issue with Morris' interpretation of K.S.A. 2020 Supp. 44-510e(a)(2)(B). Shilling argues that the plain language of K.S.A. 2020 Supp. 44-510e(a)(2)(B), our Supreme Court's decision in *Johnson v. U.S. Food Serv.*, 312 Kan. 597, 478 P.3d 776 (2021), and our decision in *Zimero v. Tyson Fresh Meats*, 61 Kan. App. 2d 1, 2021 WL 4501808 (Kan. App. 2021), disprove Morris' complaint about the Board's calculation of his BAW impairment rating. Still, in its cross-appeal, Shilling argues that competent medical evidence did not support the Board majority's calculation of Morris' BAW impairment rating at 6.5% because the Board majority's calculation hinged on inconsistent fact-findings regarding whether Morris suffered from any permanent partial impairment to his right wrist. Also, Shilling argues that the Board miscalculated Morris' preinjury average weekly wage under K.S.A. 2020 Supp. 44-511(b)(1). Particularly, it asserts that the Board's miscalculation resulted from its mistaken belief that K.S.A. 2020 Supp. 44-511(b)(1)'s plain language required it to exclude all weeks that Morris had worked for it just part time during the 26 weeks immediately preceding his electrocution from Morris' preinjury average weekly wage calculation. For this reason, Shilling asks us to reverse the Board's order and remand with directions to correct these miscalculations.

Although there are some issues with the record on appeal that complicate our review, it is readily apparent that Morris' argument is unpersuasive while Shilling's

2

arguments are persuasive. Simply put, the plain language of K.S.A. 2020 Supp. 44-510e(a)(2)(B), our Supreme Court's decision in *Johnson*, and our decision in *Zimero* refute Morris' assertion that the Board needed to consider his doctors' impairment ratings under the Fourth Edition to calculate his BAW impairment rating when determining the extent of his permanent partial general disability benefits. Nevertheless, the Board majority's inconsistent fact-findings while calculating Morris' BAW impairment rating and the Board's misinterpretation of K.S.A. 2020 Supp. 44-511(b)(1) while calculating Morris' preinjury average weekly wage require us to reverse and remand with directions to correct those errors. Thus, we reject Morris' argument and we reverse the Board's order and remand with directions: (1) that the Board redetermine the extent of Morris' permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B) after recalculating Morris' BAW impairment rating in a manner consistent with its other fact-findings and (2) that it recalculate Morris' preinjury average weekly wage under K.S.A. 2020 Supp. 44-511(b)(1) while including all weeks that Morris engaged in actual work for Shilling during the 26 weeks before his electrocution. And so, we reverse and remand for further proceedings consistent with this opinion.

FACTS

*Morris' Electrocution*

On June 22, 2018, while employed by Shilling as a general laborer and a machine operator, Morris was electrocuted as he helped operate a shuttle buggy—a machine that transfers asphalt from a dump truck to pave roads. Evidently, the bed of the dump truck, which was attached to the shuttle buggy, accidently hit a power line as Morris helped operate it. Morris had his right hand on the shuttle buggy when the dump truck hit the power line. About 69,000 volts of electricity entered Morris' right hand and exited Morris' right foot before rendering Morris unconscious for about 15 minutes.

3

Immediately after being electrocuted, emergency services transported Morris to a nearby hospital. There, Morris' doctors noted that Morris had burn wounds to his right hand and foot. Morris' doctors determined that his condition was stable, and they discharged Morris from the hospital about four hours after his admission.

Within days, Morris started complaining of overall body soreness and body stiffness. When he received additional treatment for his right hand and foot burns on June 26, 2018, he reported that he felt very unsteady and was having trouble walking. Also, within a few months of his electrocution, Morris reported that he now suffered from memory issues, insomnia, and right lower extremity sensory loss. So in addition to receiving treatment from Dr. Francis Koopman—a burn wound specialist, Morris received treatment from Dr. John Sand—a neurologist.

Ultimately, Dr. Koopman found that Morris' burn wounds were at maximum medical improvement on November 12, 2018. Based on this, Dr. Koopman also released Morris to return to regular work duty. Meanwhile, Dr. Sand released Morris from his care on December 3, 2018. In doing so, Dr. Sand predicted that Morris' continuing neurological issues may gradually improve over the next 6 to 12 months. And like Dr. Koopman, Dr. Sand concluded that Morris could return to regular work duty. After Morris returned to light-duty work just a week after his electrocution, Shilling ultimately laid Morris off on December 2, 2018.

*Morris' Independent Medical Examinations*

Given his electrocution-related injuries, Morris applied for workers compensation benefits against Shilling under the Kansas Workers Compensation Act (KWCA). Afterwards, an administrative law judge (ALJ) ordered Morris to undergo an independent medical evaluation (IME). In the end, two different doctors—Dr. Pedro Murati, who Morris had retained, and Dr. David Hufford, who the ALJ had appointed—completed

4

IMEs of Morris while giving Morris permanent partial impairment ratings and an overall BAW impairment rating under both the Fourth and Sixth Editions.

From his January 23, 2019 IME of Morris, Dr. Murati concluded Morris' June 22, 2018 electrocution had caused Morris' ongoing lumbosacral plexopathy, right sacroiliac joint dysfunction, right wrist instability, and lower back pain. He opined that Morris may need physical therapy, injections, radiological studies, medications, and surgery to address his ongoing electrocution-related injuries. He estimated that at the very least, Morris would require "yearly follow ups on his bilateral upper and lower extremities and back." And he asserted that depending on whether the Fourth or Sixth Edition applied, Morris' permanent partial impairment ratings and BAW impairment rating were as follows:

|  | Right Lower Extremity Impairment: | Lower Back Impairment: | Right Wrist Impairment: | BAW Impairment: |
|---|---|---|---|---|
| Fourth Edition: | 11% | 5% | 6% | 12% |
| Sixth Edition: | 2% | 2% | 4% | 8% |

As for Dr. Hufford's June 6, 2019 IME of Morris, Dr. Hufford concluded that Morris' June 22, 2018 electrocution had caused Morris' "residual low back pain" as well as "pain and dysesthesia in [Morris'] right lower extremity, knee to foot." But unlike Dr. Murati, Dr. Hufford opined that Morris did "not appear to have any residual symptomatology in the right wrist." So Dr. Hufford asserted that depending on whether the Fourth or Sixth Edition applied, Morris' permanent partial impairment ratings and BAW impairment rating were as follows:

|  | Right Lower Extremity Impairment: | Lower Back Impairment: | Right Wrist Impairment: | BAW Impairment: |
|---|---|---|---|---|
| Fourth Edition: | 10% | 5% | 0% | 9% |
| Sixth Edition: | 3% | 2% | 0% | 5% |

*The ALJ's Award*

Upon Morris' application for benefits, Shilling stipulated that Morris' injuries arose out of his employment with it. Likewise, even though it contested Dr. Murati's opinion that Morris had any ongoing impairment to his right wrist, it stipulated that Morris' work-related electrocution was the "prevailing factor" for his ongoing impairment to "his right lower extremity, back, and burns on the right palm." So Shilling did not contest that Morris was entitled to some benefits for his right lower extremity and lower back impairments. Instead, while before the ALJ, Shilling's arguments largely focused on two things: (1) whether the plain language of K.S.A. 2020 Supp. 44-510d(b)(23)—the provision controlling the calculation of benefits for losing the use of a scheduled member—required the ALJ to rely on only the Sixth Edition when calculating Morris' functional impairment and (2) whether the plain language of K.S.A. 2020 Supp. 44-511(b)(1)—the general provision controlling the calculation of average weekly wages—required the ALJ to include all weeks that Morris completed any actual work during the 26 weeks before his electrocution in its calculation.

As for Shilling's argument about the ALJ only relying on the Sixth Edition, Shilling recognized that in *Johnson v. U.S. Food Service*, 56 Kan. App. 2d 232, Syl. ¶ 7, 427 P.3d 996 (2018), *rev'd* 312 Kan. 597, 478 P.3d 776 (2021), we held that K.S.A. 2015 Supp. 44-510d(b)(23) and K.S.A. 2015 Supp. 44-510e(a)(2)(B) were unconstitutional because the provisions mandated the use of the Sixth Edition in a manner that violated workers' constitutional due process rights. Even so, because our Supreme Court had

6

recently granted U.S. Food Service's petition for review, Shilling argued that our holdings in *Johnson* were not binding. See Supreme Court Rule 8.03(k)(2) (2021 Kan. S. Ct. R. 54) (stating that our Supreme Court's decision to grant a timely petition for review from this court causes this court's decision to have "no force or effect"). Shilling then asserted that our *Johnson* decision was errant because under the plain language of K.S.A. 2020 Supp. 44-510d(b)(23), the ALJ must rely solely on the Sixth Edition to calculate Morris' functional impairment.

Also, after asserting that the ALJ should adopt Dr. Hufford's opinion that Morris had a 5% BAW impairment rating under the Sixth Edition, Shilling argued that Morris was not entitled to work disability as stated under K.S.A. 2020 Supp. 44-510e(a)(2)(C). This was the provision controlling whether a worker was entitled to work disability benefits in surplus of the worker's permanent partial general disability benefits for a nonscheduled injury as meant under K.S.A. 2020 Supp. 44-510e(a)(2)(B), which itself was the provision controlling the calculation of permanent partial general disability benefits. In making this assertion, Shilling noted that K.S.A. 2020 Supp. 44-510e(a)(2)(C)(i) prohibited a worker whose BAW impairment rating was less than or equal to 7.5% from receiving work disability. Even though it never cited K.S.A. 2020 Supp. 44-510e(a)(2)(B), Shilling seemingly argued that Morris was not entitled to receive work disability because Dr. Hufford found that Morris' BAW impairment rating as calculated under K.S.A. 2020 Supp. 44-510e(a)(2)(B) was only 5% under the Sixth Edition.

As for Shilling's argument about calculating Morris' preinjury average weekly wage, Shilling argued that K.S.A. 2020 Supp. 44-511(b)(1)'s plain language required the ALJ's inclusion of all weeks Morris performed any actual work, including just part-time work, in the calculation of Morris' preinjury average weekly wage. According to Shilling, Morris had performed actual work for it during just 11 or 12 weeks during the 26 weeks before his electrocution. And it asserted that Morris earned either $7,651.50 or $7,739.50

7

depending on whether the ALJ found that Morris had "actually worked" for it 11 or 12 weeks immediately preceding his electrocution. In turn, it asserted that under a proper interpretation of K.S.A. 2020 Supp. 44-511(b)(1), Morris' preinjury average weekly wage was either $644.96 or $695.55.

After Shilling filed its submission letter, it seems Morris never responded to Shilling's arguments about the calculation of his impairment ratings or his preinjury average weekly wage. Indeed, outside of Morris' application for benefits in which he requested a regular hearing before the ALJ, the record on appeal contains no written documents filed by Morris before the ALJ. To be sure, Morris argued at his regular hearing that his preinjury average weekly wage was $805.36 because he had only actually worked nine and a half weeks at Shilling before his electrocution; he otherwise made no oral arguments. Hence, when it comes to Morris' arguments before the ALJ, the record on appeal does not explicitly address (1) what type of injury he had, that is, scheduled injury or nonscheduled injury, (2) what provision authorized him to receive benefits under the KWCA, or (3) why he believed that Shilling's counterarguments were wrong.

Shortly after Shilling filed its submission letter, the ALJ issued its award. The ALJ first found that in addition to the undisputed injuries caused by his electrocution, that is, Morris' right lower extremity and lower back injuries, Morris' electrocution on June 22, 2018, was the prevailing factor for his ongoing right wrist injury. Next, the ALJ found that both Dr. Murati's and Dr. Hufford's opinions about Morris' injuries and impairment ratings persuasive. He explained that both Dr. Murati's and Dr. Hufford's positions were reasonable under the AMA Guides. The ALJ therefore averaged Dr. Murati's and Dr. Hufford's BAW impairment ratings to calculate Morris' BAW impairment rating.

The ALJ only averaged Dr. Murati's and Dr. Hufford's impairment ratings from the Sixth Edition. The ALJ ruled that even if our *Johnson* decision would require him to consider the Fourth Edition, by granting U.S. Food Service's petition for review, our

holdings in *Johnson* were stayed. Based on this, the ALJ ruled that the Sixth Edition "control[led]" the benefits. Then, it found that Morris' BAW impairment rating was 6.5% and that the plain language of K.S.A. 2020 Supp. 44-510e(a)(2)(C) prohibited Morris from receiving work disability since his BAW impairment rating was under 7.5%.

As for the parties' dispute about the calculation of Morris' preinjury average weekly wage, the ALJ mostly adopted Shilling's argument. The ALJ found that under the proper interpretation of K.S.A. 2020 Supp. 44-511(b)(1) and the facts of Morris' case, Morris worked for Shilling 11 weeks before his electrocution. Also, the ALJ supported its interpretation of K.S.A. 2020 Supp. 44-511(b)(1) by relying on the Board's decision in *Stewart v. Access Control Solutions*, No. 1,064,743, 2015 WL 4071481, at *11 (Kan. Work. Comp. App. Bd. 2015)—a case where the Board held that when calculating a worker's preinjury average weekly wage, a worker's part-time work constitutes a week "actually worked" as meant under K.S.A. 2012 Supp. 44-511(b)(1). Then, the ALJ found that Morris' wage statement, which Morris admitted into evidence at his regular hearing, proved that Morris earned $7,651.05 during those 11 weeks. And thus, the ALJ calculated Morris' preinjury average weekly wage to be $695.55.

Relying on this figure as well as Morris' BAW rating of 6.5%, the ALJ ultimately awarded Morris 26.98 weeks of permanent partial disability at a rate of $463.72 per week. This amounted to a total award of $12,511.17.

*The Board's Order*

After the ALJ entered its award, Morris asked the Board to review it. In his short brief supporting his application for review, Morris challenged the ALJ's reliance on just his doctors' Sixth Edition impairment ratings to calculate his overall BAW impairment rating. He also challenged the ALJ's calculation of his preinjury average weekly wage. So in his application for review, Morris asked that the Board reverse those calculations.

9

In challenging the ALJ's reliance on the Sixth Edition, Morris noted that under our *Johnson* decision, the ALJ should have relied solely on Dr. Murati's and Dr. Hufford's Fourth Edition impairment ratings. For this reason, Morris argued that the ALJ necessarily erred by relying on just Dr. Murati's and Dr. Hufford's impairment ratings under the Sixth Edition in determining his award. Relying on this same reasoning, Morris asserted that the ALJ's finding that he was not entitled to work disability was fundamentally flawed. He alleged that because his BAW impairment rating exceeded 7.5% when using Dr. Murati's and Dr. Hufford's Fourth Edition impairment ratings, the ALJ should have awarded him work disability. As with his arguments before the ALJ, Morris never cited the statutory authority entitling him to such benefits when arguing the ALJ miscalculated his BAW impairment rating.

In challenging the ALJ's calculation of his preinjury average weekly wage under K.S.A. 2020 Supp. 44-511(b)(1), in contrast, Morris argued that the ALJ misinterpreted K.S.A. 2020 Supp. 44-511(b)(1)'s plain language. He asserted that under a proper interpretation of this provision, the Legislature's inclusion of the language "actually worked" meant that the Legislature intended to exclude the weeks a worker worked just part time from that worker's preinjury average weekly wage. In short, Morris argued that in calculating his preinjury average weekly wage, K.S.A. 2020 Supp. 44-511(b)(1)'s plain language required the Board to include only the nine weeks that he worked full time for Shilling immediately before his electrocution.

Upon Morris' application for Board review, Shilling also filed a brief with the Board. In this brief, Shilling continued to argue that the Sixth Edition controlled the calculation of Morris' functional impairment rating under the plain language of K.S.A. 2020 Supp. 44-510d(b)(23). And it continued to argue that because our *Johnson* decision remained pending for review before our Supreme Court, it was irrelevant whether we had held that K.S.A. 2020 Supp. 44-510d(b)(23) was unconstitutional.

10

But Shilling also now argued that insufficient evidence supported the ALJ's finding that Morris suffered from any permanent partial impairment to his right wrist. As a result, Shilling agreed with Morris that the ALJ's calculation of his BAW impairment rating was erroneous. But it argued that the correct calculation of Morris' BAW impairment rating was 4.5%. This percentage excluded Dr. Murati's permanent partial impairment rating as to Morris' right wrist before averaging Dr. Murati's and Dr. Hufford's remaining permanent partial impairment ratings as to Morris' undisputed right lower extremity and lower back injuries. Hence, even though Shilling still argued that the ALJ correctly refused to award Morris work disability under K.S.A. 2020 Supp. 44-510e(a)(2)(C), it wanted the Board to amend the ALJ's calculation of Morris' BAW impairment rating to 4.5%.

Also, Shilling had previously asked the ALJ to calculate Morris' preinjury average weekly wage as either $644.96 *or* $695.55. Nevertheless, Shilling now maintained that Morris' preinjury average weekly wage was exactly $644.96 because Morris had engaged in actual work for it during 12 different weeks. It asserted that under K.S.A. 2020 Supp. 44-511(b)(1)'s plain language, the ALJ had no discretion but to include the weeks that Morris had worked part time in its calculation of Morris' preinjury average weekly wage. Then, in addition to its argument about the Board majority miscalculating Morris' BAW impairment rating, Shilling asked the Board to amend the ALJ's calculation of Morris' preinjury average weekly wage to $644.96.

Eventually, the Board issued an order in which the majority affirmed the ALJ's reliance on just Morris' doctors' Sixth Edition impairment ratings as well as the ALJ's finding that Morris suffered a BAW impairment rating of 6.5%. Also, the entire Board affirmed that ALJ's finding that Morris was not entitled to any additional work disability under K.S.A. 2020 Supp. 44-510e(a)(2)(C).

11

In its order, the Board majority rejected the ALJ's finding that Morris suffered any permanent partial right wrist injury. The entire Board reversed the ALJ's finding that Morris' preinjury average weekly wage was $695.55. It found that under K.S.A. 2020 Supp. 44-511(b)(1)'s plain language, it had to exclude any weeks that Morris worked part time from Morris' preinjury weekly wage calculation. As a result, the Board accepted Morris' argument that he had worked for Shilling only nine weeks before his electrocution. It then found that during those nine weeks, Morris had earned $7,043.05. Afterwards, the Board relied on the preceding to find that Morris' preinjury average weekly wage was $782.56, entitling him to an award of 26.98 weeks of permanent partial disability at a rate of $521.73 per week for a total award of $14,076.28.

A sole member of the Board dissented from the Board majority's order, in part. This member specifically attacked the Board majority's decision to affirm the ALJ's finding that Morris' BAW impairment rating was 6.5%. This member alleged that the majority's reversal of the ALJ's finding that Morris had any permanent partial impairment to his right wrist meant that the Board majority had to reassess the ALJ's finding that Morris had a 6.5% BAW impairment rating.

ANALYSIS

*Did the Board Err When Determining Morris' Permanent Partial General Disability Benefits?*

Once the Board had rejected his argument about the ALJ's sole reliance on his doctors' Sixth Edition impairment ratings, Morris timely petitioned us for review. Then, Shilling timely filed a timely cross-petition to review the Board's order as well. See K.S.A. 2020 Supp. 44-556(a) (discussing procedures for timely appealing Board's order to this court).

12

In his appellant's brief, Morris challenges the Board's failure to consider Dr. Murati's and Dr. Hufford's impairment ratings under the Fourth Edition when determining his permanent partial general disability benefits. Morris' argument, however, has changed from his argument at the administrative level. There is very little in the record on appeal regarding Morris' specific arguments before the ALJ and the Board. It is readily apparent that while before them, Morris alleged that our *Johnson* decision required the ALJ's and Board's use of the Fourth Edition when determining his benefits award.

In our *Johnson* decision, we held that from then on, fact-finders must use the Fourth Edition to calculate impairment ratings under K.S.A. 2015 Supp. 44-510d(b)(23) and K.S.A. 2015 Supp. 44-510e(a)(2)(B). Highly summarized, it did so, because it ruled that K.S.A. 2015 Supp. 44-510d(b)(23)'s and K.S.A. 2015 Supp. 44-510e(a)(2)(B)'s language mandated fact-finders to rely just on doctors' Sixth Edition impairment ratings when awarding benefits in a way that violated workers' constitutional due process rights. In essence, it concluded that although the KWCA used to provide workers with an adequate remedy for their work-related injuries, the 2013 amendments to K.S.A. 2015 Supp. 44-510d(b)(23) and K.S.A. 2015 Supp. 44-510e(a)(2)(B) mandating the use of the Sixth Edition removed that adequate remedy. 56 Kan. App. 2d 232, Syl. ¶¶ 7-8.

Now that our Supreme Court has reversed our holding in *Johnson* that K.S.A. 2015 Supp. 44-510e(a)(2)(B) is unconstitutional, Morris' argument hinges on our Supreme Court's explanation why K.S.A. 2019 Supp. 44-510e(a)(2)(B) is constitutional. He stresses that in reversing our holding that K.S.A. 2015 Supp. 44-510e(a)(2)(B) was unconstitutional, our Supreme Court held that by including the phrase "competent medical evidence" in K.S.A. 2019 Supp. 44-510e(a)(2)(B), the Legislature intended for the Sixth Edition to act as "a standard starting point" when determining whether a worker was entitled to permanent partial general disability benefits. *Johnson*, 312 Kan. at 602. Then, relying on this language from our Supreme Court's *Johnson* decision, Morris

argues that the Board's refusal to consider Dr. Murati's and Dr. Hufford's permanent partial and BAW impairment ratings under the Fourth Edition was erroneous. And given this, he asks us to reverse the Board's finding that his BAW impairment rating was 6.5% and remand with directions that it recalculate his BAW impairment rating while merely using Dr. Murati's and Dr. Hufford's Sixth Edition impairment ratings as just the standard starting point.

In its appellee's brief, Shilling contends that Morris' interpretation of our Supreme Court's *Johnson* decision is erroneous. In making this argument, Shilling points to our Supreme Court's *Johnson* holding that "[t]he reference in K.S.A. 2019 Supp. 44-510e(a)(2)(B) to the Sixth Edition of the American Medical Association Guides does not render the statute unconstitutional . . . because it is merely a guide which does not alter the requirement that any impairment rating be 'established by competent medical evidence.'" 312 Kan. 597, Syl. ¶ 2. It asserts that in holding this way, our Supreme Court ruled that under K.S.A. 2020 Supp. 44-510e(a)(2)(B)'s plain language, the Legislature intended for impairment ratings under the Fourth Edition to not constitute competent medical evidence for injuries occurring after January 1, 2015. Instead, after that date, awards under K.S.A. 2020 Supp. 44-510e(a)(2)(B) must be based on the worker's "percentage of functional impairment, as established by a doctor's opinion given within a reasonable degree of medical certainty and based upon the Sixth Edition."

It also argues that its position is supported by our recent *Zimero* decision. Shilling emphasizes that there, when evaluating Zimero's assertion that the Board wrongly refused to consider her doctor's Fourth Edition impairment rating when determining the extent of her permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B), we relied on our Supreme Court's *Johnson* decision to hold that "[a]ny reference to the Fourth Edition for injuries occurring after January 1, 2015, is irrelevant." *Zimero*, 2021 WL 4501808, at *3. Even more, in its appellee's brief, Shilling relies on this holding from *Zimero* as proof that the Fourth Edition "cannot be considered, either

14

alone or in combination with the Sixth Edition" when calculating "permanent partial impairment for any injury [that] occurs after January 1, 2015."

At the same time, in its cross-appellant's brief, Shilling challenges the Board majority's finding that Morris suffered a 6.5% BAW impairment rating. Like the Board member who dissented in part, Shilling contends that the Board majority's decision to affirm the ALJ's finding that Morris had a 6.5% BAW impairment rating was erroneous because the ALJ's calculation of Morris' BAW impairment rating included Dr. Murati's finding that Morris suffered a 4% permanent partial impairment to his right wrist. It contends that because the Board majority reversed the ALJ's finding that Morris has any permanent partial impairment to his right wrist, competent medical evidence does not support the Board majority's decision to adopt the ALJ's 6.5% BAW impairment rating. Further, it argues that had the Board correctly calculated Morris' BAW impairment rating, it would have excluded Dr. Murati's 4% right wrist impairment rating before averaging Dr. Murati's and Dr. Hufford's remaining impairment ratings under the Sixth Edition together to find that Morris suffered a 4.5% BAW impairment rating. Alternatively, it argues that the Board should have adopted Dr. Hufford's 5% BAW impairment rating since Dr. Hufford's BAW impairment rating calculation did not hinge on Morris suffering from any right wrist impairment. Thus, Shilling asks us to reverse and remand so the Board can amend its calculation of Morris' BAW impairment rating in the preceding manner.

In its cross-appellant's brief, Shilling additionally contends that we should reverse the Board's finding that Morris' preinjury average weekly wage was $782.56. Shilling contends that under the correct interpretation of K.S.A. 2020 Supp. 44-511(b)(1)'s plain language on the calculation of a worker's preinjury average weekly wage, the Board's calculation had to include all weeks that Morris engaged in any actual work for it during the 26 weeks preceding his electrocution. So Shilling asks us to reverse the Board's

15

calculation of Morris' preinjury average weekly wage and remand with directions to recalculate this figure to include all weeks that he engaged in any actual work.

Morris has not filed a cross-appellee's brief. Regardless, from what is apparent in the record on appeal, Shilling's appellate arguments are persuasive while Morris' lone appellate argument is unpersuasive. In short, our recent *Zimero* decision undermines Morris' contention that the Board erred by refusing to consider Dr. Murati's and Dr. Hufford's impairment ratings under the Fourth Edition when determining the extent of his permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B). On the other hand, as argued by Shilling, the Board majority's finding that Morris had no permanent partial impairment to his right wrist was inconsistent with its decision to affirm without reassessing the ALJ's finding that Morris suffered a 6.5% BAW impairment rating. Also, the plain language of K.S.A. 2020 Supp. 44-511(b)(1) supports Shilling's argument about including all weeks that Morris engaged in any actual work in his preinjury average weekly wage calculation.

That is why we reject Morris' argument that the Board erred by considering only his doctors' Sixth Edition impairment ratings while accepting Shilling's arguments about the Board miscalculating Morris' BAW impairment rating and preinjury average weekly wage. Hence, we reverse the Board's order and remand with directions to address those miscalculations.

*The Limitations of the Record on Appeal Have Frustrated Review.*

Before addressing the merits of the parties' specific arguments, it is important to point out an issue with the parties' arguments as presented in the record on appeal.

It is a well-known rule that the party claiming error has the burden to designate a record on appeal that establishes the party's claim of error. *Friedman v. Kansas State Bd.*

16

*of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). Similarly, it is a well-known rule that parties generally cannot raise arguments for the first time on appeal. See *Linenberger v. Kansas Dept. of Revenue*, 28 Kan. App. 2d 794, 797, 20 P.3d 1290 (2001) (holding that in administrative appeals, parties are limited to raising issues that were first raised at the administrative hearing). In short, it necessarily follows that parties claiming error have the burden to designate a record establishing their claims of error are properly before us.

When considering such preservation issues, whether a party has properly preserved an argument for appeal constitutes a question of law over which this court exercises unlimited review. *State v. Fleming*, 308 Kan. 689, 695, 423 P.3d 506 (2018). To the extent that the discussion of the limited record on appeal involves statutory interpretation, statutory interpretation is a question of law over which this court exercises unlimited review as well. *Johnson*, 312 Kan. at 600.

Here, as indicated in the facts section of this opinion, the written filings and hearing transcripts that Morris has included in the record on appeal from his proceedings before the ALJ do not address (1) what type of injury he had, that is, a scheduled injury or nonscheduled injury, (2) what statute authorized him to receive benefits under the KWCA, or (3) why he believed that Shilling's counterarguments were wrong. And Morris submitted a brief to the Board in which he challenged the ALJ's reliance on just Dr. Murati's and Dr. Hufford's impairment ratings under the Sixth Edition. Morris, however, never cited any statutory authority to support his benefits request in that brief.

In contrast, Shilling cited statutory authority to support its arguments at the administrative level, but the statutory authority Shilling cited was inconsistent. In its written filings, Shilling cited K.S.A. 2020 Supp. 44-510d(b)(23) as the statute authorizing Morris benefits under the KWCA. As noted in the facts section of this opinion, this

17

provision involves the calculation of benefits for a worker who has lost the use of a scheduled member. In its entirety, it states:

> "Loss of or loss of use of a scheduled member shall be based upon permanent impairment of function to the scheduled member as determined using the fourth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein, until January 1, 2015, but for injuries occurring on and after January 1, 2015, shall be determined by using the sixth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein." K.S.A. 2020 Supp. 44-510d(b)(23).

Yet, at the same time, Shilling has always also argued that Morris was not entitled to work disability as outlined under K.S.A. 2020 Supp. 44-510e(a)(2)(C) because his BAW impairment rating was under 7.5%. Even if Morris had a nonscheduled injury entitling him to permanent partial general disability under K.S.A. 2020 Supp. 44-510e(a)(2)(A), this would have been a requirement for Morris to obtain work disability since he lacked a preexisting functional impairment. See K.S.A. 2020 Supp. 44-510e(a)(2)(C)(i) (stating that when worker has no preexisting functional impairment, worker may receive work disability benefits in excess of worker's permanent partial general disability benefits if worker's percentage of functional impairment determined to be caused solely by injury exceeds 7.5%).

Clearly, though, it does not make sense why Shilling relied on both K.S.A. 2020 Supp. 44-510d(b)(23) and K.S.A. 2020 Supp. 44-510e(a)(2)(C) at the same time: Under K.S.A. 2020 Supp. 44-510e(a)(2)(C), a worker must be eligible for permanent partial general disability to receive work disability since it states that the worker "may be eligible to receive permanent partial general disability compensation in excess of the percentage of functional impairment ('work disability')" if certain conditions are met. But K.S.A. 2020 Supp. 44-510e(a)(2)(A) explicitly states that a worker is eligible to receive permanent partial general disability only when that worker's injury "is not covered by the

18

schedule in K.S.A. 44-510d, and amendments thereto." So Shilling's reliance on K.S.A. 2020 Supp. 44-510d(b)(23), which suggests that Shilling believed Morris had a scheduled injury, necessarily conflicts with Shilling's reliance on K.S.A. 2020 Supp. 44-510e(a)(2)(C), which suggest that Shilling believed Morris had a nonscheduled injury.

All in all, at the administrative level, Shilling presented conflicting arguments that do not readily clarify (1) whether Morris suffered from a scheduled or nonscheduled injury or (2) what statutory authority entitled Morris to KWCA benefits. If anything, Shilling's conflicting arguments at the administrative level make it more difficult to understand the precise nature of Morris' injuries and arguments.

Besides, in their respective decisions, the ALJ and the Board never cited to K.S.A. 2020 Supp. 44-510d(b)(23), never referred to Morris' injury as a scheduled or nonscheduled injury, and never explicitly found that Morris' injury entitled him to permanent partial general disability as stated under K.S.A. 2020 Supp. 44-510e(a)(2)(A). Instead, in their respective decisions, the ALJ and Board both found that Morris was entitled to permanent partial disability after rejecting Morris' apparent argument about being entitled to work disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(C).

In turn, the record before us on appeal supports the following: (1) that Morris never cited any statutory authority to support his request for benefits while at the administrative level, (2) that Shilling cited conflicting statutory authority to support its arguments at the administrative level, and (3) that outside of referring to K.S.A. 2020 Supp. 44-510e(a)(2)(C) when finding that Morris was not entitled to work disability, the ALJ and Board never cited any statutory authority to support their decisions.

Arguably, with such little information about the parties' arguments at the administrative level in the record on appeal, both parties have failed to designate a record establishing their claims of error. Even more, it seems questionable whether the parties

19

can establish that their arguments are properly before us when nothing in the record on appeal indicates that the parties ever cited any statutory authority at the administrative level to support their arguments. Under such circumstances, nothing within the record on appeal could ever definitively establish that the parties are not raising their arguments for the first time on appeal.

Nevertheless, as just indicated when addressing the inconsistencies within Shilling's administrative level complaints, a worker is not entitled to work disability under K.S.A. 2020 Supp. 44-510e(a)(2)(C) unless that worker is already eligible to receive permanent partial general disability benefits; however, a worker is not eligible to receive permanent partial general disability benefits if that worker's injury is covered by the schedule under K.S.A. 2020 Supp. 44-510d. And so, by even considering whether Morris was eligible for work disability as stated under K.S.A. 2020 Supp. 44-510e(a)(2)(C), the ALJ and Board implicitly found that Morris had an unscheduled injury that entitled him to permanent partial general disability benefits as meant under K.S.A. 2020 Supp. 44-510e(a)(2)(A). This implicit finding further establishes that the ALJ and Board rejected Shilling's assertion Morris had a scheduled injury as meant under K.S.A. 2020 Supp. 44-510d(b)(23).

Also, the preceding interpretation of the ALJ's and the Board's decisions is consistent with the parties' appellate arguments. A review of both parties' appellate filings establish that the parties' appellate arguments focus on whether the Board correctly determined the extent of his permanent partial general disability benefits as stated under K.S.A. 2020 Supp. 44-510e(a)(2)(B).

Relatedly, we do not know why Shilling cited K.S.A. 2020 Supp. 44-510d(b)(23) at the administrative level. Shilling has abandoned any argument that it had regarding K.S.A 2020 Supp. 44-510d(b)(23)'s application by never addressing the Board's implicit finding that Morris had an unscheduled injury entitling him to permanent partial general

20

disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(A). See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (holding that parties abandon any argument that they do not raise in their appellate briefs). And regardless of this, Shilling's decision to cite only K.S.A. 2020 Supp. 44-510e(a)(2)(B) while making its appellate arguments constitutes a concession that Morris had an unscheduled injury entitling him to some level of permanent partial general disability benefits as stated under K.S.A. 2020 Supp. 44-510e(a)(2)(A). See *Fleming*, 308 Kan. at 696 (explaining that the principle underlying the invited error doctrine is "that a party cannot ask a court to take a specific action and then later ask for the judgment to be reversed because the court complied with the request").

So the parties' failure to cite statutory authority and citation to conflicting statutory authority at the administrative level have complicated our review. Neither party, however, has specifically complained about each other's failure to cite the applicable authority at the administrative level or to include documents in the record on appeal showing that they cited the applicable authority at the administrative level. More importantly, because the ALJ and Board implicitly found that Morris had an unscheduled injury entitling him to some level of permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(A), we know enough to address the merits of the parties' arguments despite the preceding problems.

Zimero *Undermines Morris' Argument About the Fourth Edition Applications.*

Having addressed the problems with the parties' arguments as presented in the record on appeal, we may now consider Morris' assertion that the Board erred by refusing to consider Dr. Murati's and Dr. Hufford's impairment ratings under the Fourth Edition before determining the extent of his permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B).

To review, statutory interpretation issues involve questions of law over which this court exercises unlimited review. *Johnson*, 312 Kan. at 600. Also, when the issue before this court concerns whether the Board misapplied the law, the Kansas Judicial Review Act, which governs this court's review, gives this court unlimited review over the Board's application of the law. *Zimero*, 2021 WL 4501808, at *3. Alternatively, when the issue before this court concerns the Board's fact-findings, "this court reviews those findings in light of the record as a whole to determine whether the Board's factual determinations are supported by substantial evidence." 2021 WL 4501808, at *3. While engaging in this review, this court must "'(1) review evidence both supporting and contradicting the agency's findings; (2) examine the presiding officer's credibility determination, if any; and (3) review the agency's explanation as to why the evidence supports its findings.'" 2021 WL 4501808, at *3. Even so, at no point during this review, should this court reassess the Board's fact-findings on conflicting evidence. 2021 WL 4501808, at *3.

As addressed already, now that our Supreme Court has reversed our *Johnson* decision, the parties' appellate arguments hinge on their readings of the *Johnson* court's interpretation of K.S.A. 2019 Supp. 44-510e(a)(2)(B)'s plain language. This provision, which has not been substantively amended since 2013, states:

> "The extent of permanent partial general disability shall be the percentage of functional impairment the employee sustained on account of the injury *as established by competent medical evidence and* based on the fourth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein, until January 1, 2015, but *for injuries occurring on and after January 1, 2015, based on the sixth edition of the American medical association guides to the evaluation of permanent impairment, if the impairment is contained therein*." (Emphasis added.) K.S.A. 2020 Supp. 44-510e(a)(2)(B).

See L. 2013, ch. 104, § 9.

22

In our Supreme Court's *Johnson* decision, our Supreme Court reversed our ruling that K.S.A. 2015 Supp. 44-510e(a)(2)(B) violated workers' constitutional due process rights by mandating the use of the Sixth Edition when calculating workers' permanent partial general disability benefits. Once more, our Supreme Court held that by using the phrase "based on" in K.S.A. 2019 Supp. 44-510e(a)(2)(B), "the Legislature intended the Sixth Edition to serve as a standard starting point for the more important and decisive 'competent medical evidence.'" 312 Kan. at 602. So, in *Johnson*, it seems our Supreme Court left open the possibility that in some instances, the extent of a worker's permanent partial general disability may be based on Fourth Edition impairment ratings.

On appeal, Morris argues that when determining the extent of a worker's permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B), the Board should not have flatly refused to consider Dr. Murati's and Dr. Hufford's Fourth Edition impairment ratings. That is, he contends that under our Supreme Court's holding in *Johnson*, the Board could have relied on Dr. Murati's and Dr. Hufford's impairment ratings under the Fourth Edition when determining his permanent partial general disability benefits. Morris therefore asks us to reverse the Board's finding that he had 6.5% BAW impairment rating and remand with directions that the Board use Dr. Murati's and Dr. Hufford's impairment ratings under the Sixth Edition as a mere starting point in determining the extent of his permanent partial general disability benefits.

As argued by Shilling, however, in his recently filed letter under Supreme Court Rule 6.09 (2021 Kan. S. Ct. R. 40), Morris' argument does not account for our decision in *Zimero*. Indeed, a review of the *Zimero* decision establishes that Morris' argument that the Board erred by refusing to consider Dr. Murati's and Dr. Hufford's impairment ratings under the Fourth Edition when determining the extent of his permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B) is fatally flawed.

23

On appeal in that case, like Morris on appeal in this case, Zimero asserted that the Board erred when determining her permanent partial general disability benefits because it interpreted K.S.A. 2020 Supp. 44-510e(a)(2)(B) as mandating the use of her doctor's Sixth Edition impairment rating. She asserted that given our Supreme Court's holding in *Johnson* that the Sixth Edition merely constituted a standard starting point in determining a worker's permanent partial general disability benefits, the Board had to consider her doctor's Fourth Edition impairment rating regardless of whether competent medical evidence supported her doctor's Sixth Edition impairment rating. *Zimero*, 2021 WL 4501808, at *3. In the end, though, we rejected Zimero's assertion that the Board should have considered more than just her doctor's Sixth Edition impairment rating.

In doing so, we first rejected Zimero's interpretation of our Supreme Court's *Johnson* decision for the following reason:

"Zimero misconstrues *Johnson* as allowing an ALJ or the Board to ignore the functional impairment rating provided by the Sixth Edition if they believe that the Fourth Edition impairment rating is more appropriate. The Legislature specifically chose to adopt the Sixth Edition as the new set of guidelines for injuries occurring after January 1, 2015. But as stated in *Johnson*, the impairment rating must still be supported by 'competent medical evidence' with the Sixth Edition used as a starting point for the determination. See *Johnson*, 312 Kan. at 602. Based on *Johnson*, the Fourth Edition is irrelevant after January 1, 2015. We start with the Sixth Edition and then use competent medical evidence to increase or decrease that guideline amount. Parties and courts do not choose between using the Fourth Edition or the Sixth Edition. The Sixth Edition is statutorily required." 2021 WL 4501808, at *4.

And given the preceding, the *Zimero* court next considered whether Zimero's doctor's Sixth Edition impairment rating adopted by the Board was supported by competent medical evidence. Because the facts of Zimero's case established that her doctor's Sixth Edition impairment rating was supported by competent medical evidence,

24

we affirmed the Board's sole reliance on Zimero's doctor's Sixth Edition impairment rating to calculate her BAW impairment rating and determine the extent of her permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B). 2021 WL 4501808, at *4.

In summary, in *Zimero*, we held that under a proper reading of *Johnson*'s interpretation of K.S.A. 2020 Supp. 44-510e(a)(2)(B), "the Fourth Edition is irrelevant after January 1, 2015." 2021 WL 4501808, at *4. Then, the *Zimero* court ruled that the Board correctly determined the extent of Zimero's permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B) because the Board had relied on her doctor's impairment rating under the Sixth Edition, which was supported by competent medical evidence.

Of additional import, the *Zimero* decision was not originally a published opinion. Instead, *Zimero v. Tyson Fresh Meats, Inc.* became a published opinion upon our Supreme Court's order granting Tyson Fresh Meats' motion for publication under Supreme Court Rule 7.04(e) on September 23, 2021. See 2021 Kan. S. Ct. R. 46. So even though this panel has the right to disagree with the *Zimero* panel, it is now a precedent.

Returning to Morris' argument that the Board violated our Supreme Court's precedent in *Johnson* by refusing to consider Dr. Murati's and Dr. Hufford's Fourth Edition impairment ratings, we note that as of this date, Morris has not responded to Shilling's Rule 6.09 letter citing *Zimero*. See 2021 Kan. S. Ct. R. 40. Also, we note that our Supreme Court just granted Tyson Fresh Meats' motion to publish *Zimero* on September 23, 2021. And Shilling just filed its Rule 6.09 letter citing *Zimero* on September 29, 2021. Morris has not addressed our analysis in *Zimero*. As stated earlier, this analysis wholly undermines Morris' assertion that the Board violated our Supreme Court's precedent in *Johnson* by refusing to consider Dr. Murati's and Dr. Hufford's Fourth Edition impairment ratings. And given that our Supreme Court just granted Tyson

25

Fresh Meats' motion to publish, we have no reservations about adopting the *Zimero* court's clarification of our Supreme Court's *Johnson* precedent to reject Morris' assertion that the Board violated K.S.A. 2020 Supp. 44-510e(a)(2)(B)'s plain language by solely considering Dr. Murati's and Dr. Hufford's impairment ratings under the Sixth Edition when determining the extent of his permanent partial general disability benefits.

Finally, it is important to stress that the entirety of Morris' argument hinges on the Board misapplying K.S.A. 2020 Supp. 44-510e(a)(2)(B) based on its flawed interpretation of our Supreme Court's *Johnson* precedent. Outside of this argument, Johnson never challenges Dr. Murati's and Dr. Hufford's impairment ratings under the Sixth Edition. Morris has never argued at the administrative level or on appeal that the Board erred by solely relying on Dr. Murati's and Dr. Hufford's Sixth Edition impairment ratings because competent medical evidence did not support those ratings under the specific facts of his case. So Morris has abandoned his ability to challenge whether competent medical evidence supported Dr. Murati's and Dr. Hufford's impairment ratings under the Sixth Edition as well as his ability to challenge the Board's sole reliance on those Sixth Edition impairment ratings in determining his permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B). See *In re Marriage of Williams*, 307 Kan. at 977 (holding that parties abandon any argument that they do not raise in their briefs).

To conclude, we reject Morris' argument about the Board's reliance on just Dr. Murati's and Dr. Hufford's Sixth Edition impairment ratings in determining the extent of his permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B). *Zimero*'s precedent establishes that Morris' argument is unpersuasive. Also, because Morris has never argued that Dr. Murati's and Dr. Hufford's Sixth Edition impairment ratings were somehow errant under the facts of his case, Morris has forever abandoned his ability to argue (1) that those impairment ratings were not supported by competent medical evidence or (2) that the Board erred by solely relying on those Sixth

26

Edition impairment ratings to determine his permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B). Given all this, we affirm the Board's sole reliance on Dr. Murati's and Dr. Hufford's Sixth Edition impairment ratings to determine Morris' permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B).

*The Board Majority's Inconsistent Fact-Findings Support Shilling's Argument About It Miscalculating Morris' BAW Impairment Rating.*

Once again, when the issue before this court concerns the Board's fact-findings, "this court reviews those findings in light of the record as a whole to determine whether the Board's factual determinations are supported by substantial evidence." *Zimero*, 2021 WL 4501808, at *3. "[S]ubstantial evidence is evidence of substance and relevant consequence, carrying a fitness to induce conviction that the award is proper or furnishing a substantial basis of fact for reasonably resolving the issue." *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514, 154 P.3d 494 (2007).

Shilling's primary argument in its cross-appeal takes issue with the Board majority's finding that Morris' BAW impairment rating was 6.5%. In essence, Shilling adopts the dissenting Board member's position that competent medical evidence did not support the Board majority's calculation of Morris' BAW impairment rating at 6.5% because the Board majority's calculation hinged on inconsistent fact-findings. Schilling stresses that the Board majority reversed the ALJ's finding that Morris suffered from any permanent partial impairment to his right wrist while also affirming the ALJ's calculation of Morris' BAW impairment rating at 6.5%; it is undisputed that the ALJ's calculation of Morris' BAW impairment rating included Dr. Murati's permanent partial impairment rating to Morris' right wrist. As a result, Shilling asks us to reverse the Board majority's order and remand with directions that it recalculate Morris' BAW impairment rating while excluding Dr. Murati's permanent partial impairment rating to Morris' right wrist.

27

Said another way, Shilling asks us to reverse and remand with directions that the Board redetermine Morris' permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B) after recalculating Morris' BAW impairment rating in a manner consistent with its other fact-findings.

A review of the Board majority's award establishes that it did both reverse the ALJ's finding that Morris suffered from any permanent partial impairment to his right wrist while also affirming without reassessing the ALJ's finding that Morris' BAW impairment rating was 6.5%. Also, nothing within the Board majority's opinion explained why it did this. Instead, after reversing the ALJ's finding that Morris suffered from any permanent partial impairment to his right wrist, the entirety of the Board majority's analysis why Morris' BAW impairment rating was 6.5% was as follows: "The Board gives equal weight to the doctors' opinions. [Morris'] accidental injury resulted in [him] sustaining a 6.5% impairment to the body as a whole. This portion of the ALJ's ruling is affirmed."

Thus, Shilling's assertion that competent medical evidence did not support the Board majority's finding that Morris' BAW impairment rating was 6.5% for purposes of determining his permanent partial general disability benefits under K.S.A. 2020 Supp. 44-510e(a)(2)(B) has merit. Quite clearly, substantial evidence cannot support the Board's calculation of a worker's BAW impairment rating when the Board's calculation contradicts other fact-findings regarding the worker's impairment ratings within its opinion. So we reverse the Board majority's calculation of Morris' BAW impairment rating at 6.5% and remand with directions that it reconsider this rating in light of its finding that Morris suffered no permanent partial impairment to his right wrist.

*The Plain Language of K.S.A. 2020 Supp. 44-511(b)(1) Supports Shilling's Argument About Including All Weeks Morris Actually Worked in Morris' Preinjury Average Weekly Wage Calculation.*

Again, issues involving statutory interpretation and issues involving whether the Board misapplied the law constitute questions of law over which this court exercises unlimited review. *Johnson*, 312 Kan. at 600; *Zimero*, 2021 WL 4501808, at *3. Also, when considering issues of statutory interpretation, "[t]he most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained." *Johnson*, 312 Kan. at 600. This means that if the plain language of a statute is unambiguous, this court must not speculate about the Legislature's intent behind that statute's clear language. Instead, if a disputed statute's plain language is unambiguous, this court interprets the disputed statute's words by giving those words their ordinary meanings. 312 Kan. at 600-01.

To review, because the Board found that K.S.A. 2020 Supp. 44-511(b)(1)'s plain language required it to exclude any weeks that Morris worked part time from Morris' preinjury weekly wage calculation, the entire Board reversed the ALJ's preinjury average weekly wage calculation. Again, according to the ALJ, Morris' preinjury average weekly wage was $695.55 because Morris had actually worked for Shilling 11 weeks before his electrocution. The Board, however, found that Morris' preinjury average weekly wage was $782.56 because Morris had actually worked for Shilling nine weeks before his electrocution. Then, based on this finding and its calculation of Morris' BAW impairment rating, the Board awarded Morris with 26.98 weeks of permanent partial general disability at a rate of $521.73 per week for a total award of $14,076.28.

Here, Shilling's second argument in its cross-appeal takes issue with the Board's interpretation of K.S.A. 2020 Supp. 44-511(b)(1). This provision states:

"Unless otherwise provided, the employee's average weekly wage for the purpose of computing any compensation benefits provided by the workers compensation act shall be the wages the employee earned during the calendar weeks employed by the employer, up to 26 calendar weeks immediately preceding the date of the injury, divided by the number of calendar weeks the employee actually worked, or by 26 as the case may be." K.S.A. 2020 Supp. 44-511(b)(1).

Shilling specifically asserts that under K.S.A. 2020 Supp. 44-511(b)(1)'s plain language, the Board's calculation of his preinjury weekly wage had to include all weeks that he performed any actual work during the 26 weeks preceding his electrocution. In support of this argument, Shilling points to the 2011 amendments to K.S.A. 44-511(b). It argues that excluding the weeks that Morris worked for it just part time is inconsistent with those amendments since those amendments eliminated most distinctions between full-time and part-time workers when calculating a worker's preinjury average weekly wage. And while it realizes that we have no duty to follow the analysis of a Board's decision, it argues that *Stewart*—the Board decision that the ALJ relied on when calculating Morris' preinjury average weekly wage but that the Board in this case distinguished—supports its interpretation of K.S.A. 44-511(b)(1)'s 2011 amendments. As a result, Shilling asks us to reverse the Board's calculation of his preinjury average weekly wage and remand with directions that it find Morris' preinjury average weekly wage to be $644.96; this would be Morris' average weekly wage if Morris had actually worked 12 weeks for Shilling preceding his electrocution.

It is important to note that both the ALJ's and the Board's calculation of Morris' preinjury average weekly wage relied on the wage statement that Morris admitted into evidence at his regular hearing. This wage statement implies Morris worked for Shilling at some point during 12 different weeks during the 26 weeks immediately preceding his electrocution. Yet, for reasons unclear, the very first week Morris was in Shilling's employ is crossed out on Morris' wage statement. Even though we cannot be certain, it seems likely that whatever reason the first week of Morris' wage statement is crossed out

30

is related to Shilling's request before the ALJ that he find that Morris had worked either 11 or 12 weeks before his electrocution. From what is available in the record on appeal, questions remain why Morris' first week of work was crossed off his wage statement.

Notwithstanding this issue, however, K.S.A. 2020 Supp. 44-511(b)(1)'s plain language supports Shilling's interpretation of it. Under K.S.A. 2020 Supp. 44-511(b)(1)'s plain language, a worker's preinjury average weekly wage calculation must be based on the sum of the wages that the worker earned during the calendar weeks employed "up to 26 calendar weeks immediately preceding the date of the injury, divided by the number of calendar weeks the employee *actually worked*, or by 26 as the case may be." (Emphasis added.) By using the term "actually worked," the Legislature indicated that any week the worker worked for the employer should be included in the worker's preinjury average weekly wage calculation. If the Legislature intended otherwise, it could have included language in K.S.A. 2020 Supp. 44-511(b)(1) stating that weeks a worker works part time should be treated differently than weeks a worker works full time when calculating that worker's preinjury average weekly wage.

Besides, it is readily apparent that the Legislature would have stated otherwise had it meant this given the plain language of K.S.A. 2020 Supp. 44-511(b)(2) and (b)(3). K.S.A. 2020 Supp. 44-511(b)(2) creates an alternative preinjury average weekly wage calculation method when calculating the preinjury average weekly wage for a worker who was "actually employed by the employer for less than one calendar week immediately preceding the accident or injury." And K.S.A. 2020 Supp. 44-511(b)(3) discusses how to calculate a worker's preinjury average weekly wage when that worker was working for two different employers *part time*.

K.S.A. 2020 Supp. 44-511(b)(2), however, establishes that the Legislature understood how to create alternative preinjury average weekly wage calculation methods if it had any concerns that subsection (b)(1) would not adequately compensate a worker

31

for an injury. Meanwhile, K.S.A. 2020 Supp. 44-511(b)(3) shows that the Legislature has alternative preinjury average weekly wage calculation methods in some circumstances where the worker had part-time employment. In other words, the Legislature's decision to create such alternative calculation methods shows that it did not want to distinguish between full-time and part-time workers when setting the standard method for calculating a worker's preinjury average weekly wage under K.S.A. 2020 Supp. 44-511(b)(1). See *Miller v. Board of Wabaunsee County Comm'rs*, 305 Kan. 1056, 1066, 390 P.3d 504 (2017) (explaining that when interpreting a statute, courts must construe statute in a manner that is consistent with entire provisions of an act).

Because K.S.A. 2020 Supp. 44-511(b)'s plain language establishes that fact-finders should include all weeks that a worker engaged in any actual work for an employer in the worker's preinjury average weekly wage calculation, we need not consider any historical amendments to this provision as advocated by Shilling. Instead, we may reverse the Board's decision to include just nine weeks in Morris' preinjury average weekly wage calculation by relying on the plain language of K.S.A. 2020 Supp. 44-511(b)(1), (b)(2), and (b)(3).

Yet, it is worth mentioning that Shilling's arguments about the historical amendments to K.S.A. 44-511(b) and reliance on the Board decision *Stewart* are persuasive. As asserted by Shilling, before 2011, K.S.A. 44-511(b) had different methods for calculating a worker's average weekly wage depending on whether that worker was employed full time or part time. See K.S.A. 2010 Supp. 44-511(b)(4); L. 2011, ch. 55, § 13. So the Legislature's decision to amend K.S.A. 44-511(b) to eliminate these different methods for calculating a worker's average weekly wage constitutes incredibly strong evidence that the Legislature did not intend for fact-finders to distinguish between weeks a worker worked part time versus weeks a worker worked full time when calculating that worker's preinjury average weekly wage under K.S.A. 2020 Supp. 44-511(b)(1). See *Nuessen v. Sutherlands*, 51 Kan. App. 2d 616, 621, 352 P.3d 587 (2015) (holding that

Legislature's decision to revise existing law creates presumption that Legislature intended to change that law).

Also, this was the exact reason why the Board in *Stewart* ruled that K.S.A. 2012 Supp. 44-511(b)(1)'s plain language required it to include the week that Stewart had worked part time in the calculation of Stewart's preinjury average weekly wage. It explained that it would not exclude the weeks that Stewart had worked part time from its calculation of Stewart's preinjury average weekly wage calculation under K.S.A. 2012 Supp. 44-511(b)(1), because the exclusion of weeks that a worker worked just part time was the "method . . . used prior to the 2011 amendments [to the KWCA]." 2015 WL 4071481, at *11.

So Shilling has correctly argued that the Board erred when it found that Morris had worked for it just nine weeks before his electrocution for purposes of calculating his preinjury average weekly wage under K.S.A. 2020 Supp. 44-511(b)(1). Under a proper interpretation of K.S.A. 2020 Supp. 44-511(b)(1)'s plain language, the Board had to include all weeks that Morris engaged in any actual work in its calculation of Morris' preinjury average weekly wage. As a result, we reverse the Board's calculation of Morris' preinjury average weekly wage and remand with directions to recalculate this figure. Yet, as outlined already, because it is unclear from the record on appeal why Morris' first week of actual work at Shilling was crossed off his wage statement, our directions include instructions that the Board investigate whether Morris worked 11 or 12 weeks before recalculating Morris' preinjury average weekly wage under K.S.A. 2020 Supp. 44-511(b)(1).

Reversed and remanded with directions as set out in this opinion.