NOT DESIGNATED FOR PUBLICATION

Nos. 125,263
125,264

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of R.S. and C.S.,
Minor Children.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed January 13, 2023.
Affirmed.

*Monte L. Miller*, of Miller & Miller, Chtd., of Emporia, for appellant natural mother.

*Deborah A. Huth*, of Atherton & Huth Law Office, of Emporia, for appellant natural father.

*Meghan K. Morgan*, assistant county attorney, and *Marc Goodman*, county attorney, for appellee.

Before MALONE, P.J., HURST and COBLE, JJ.

PER CURIAM: In this consolidated appeal arising under the Revised Kansas Code
for Care of Children (KCCC), K.S.A. 38-2201 et seq., Mother and Father appeal the
termination of their parental rights over R.S. and C.S. They claim the district court's
findings of unfitness were not supported by clear and convincing evidence, and that the
termination of their parental rights was not in the best interests of the children. After a
thorough review of the record, we disagree and affirm the district court's judgment.

FACTUAL AND PROCEDURAL HISTORY

On July 30, 2019, following reports of physical neglect by Mother, the State
petitioned to have R.S. (born in 2018) and C.S. (born in 2016) declared children in need

of care (CINC). The affidavit attached to the petitions detailed various reports of alleged physical abuse or neglect by both parents since 2017. In early July 2019, social workers began investigating a report of physical neglect by Mother—who, at the time, was the sole caregiver because Father was incarcerated on a parole violation. The reports also stated Mother suffered from a traumatic brain injury which limited her ability to provide adequate care for the children. During home visits, the case workers observed signs of poor hygiene, malnutrition, and improper living conditions.

After the State filed the CINC petitions, the district court promptly ordered placement of R.S. and C.S. in the custody of the Kansas Department for Children and Families (DCF), appointed a guardian ad litem (GAL), and appointed separate counsel for Mother and Father. After a hearing the next month, the district court entered an order adjudicating R.S. and C.S. as children in need of care based on no-contest stipulations by Mother and Father and ordered the children to remain in DCF custody with DCF authority for placement.

Mother and Father worked separately on case plan tasks for most of the case because of a no-contact order put in place as a condition of Father's parole. During this time, Mother lived in the home while Father lived at the Emporia Rescue Mission, a men's shelter. Eventually, in October 2020, the district court decided Mother had made enough progress to authorize reintegration in her home if "[s]ervice providers determine that returning to . . . [M]other's home is appropriate." Yet the children never returned to the home, and in January 2021, the district court entered an order changing the case plan to adoption or permanent custodianship and directed the State to move for termination of parental rights.

The State filed a motion for finding of unfitness and termination of parental rights in March 2021, alleging Mother and Father were unfit for various statutory reasons and that such circumstances were unlikely to change in the foreseeable future. The district

court held a termination hearing over two days in August 2021, at which many case workers and other individuals who had been involved in the case testified. The witnesses consistently testified that Mother's traumatic brain injury made it difficult for her to provide appropriate care for the children because she needed constant reminders about things like cleaning the home or what kinds of food the children should be eating.

As to Father, the witnesses largely agreed his progress was hindered by a no-contact order that prevented him from working on case plan tasks with Mother, as well as the fact that he lived in a men's shelter throughout most of the case. The witnesses also agreed Mother and Father could work better as a team, which was reflected by the progress both made once the no-contact order was lifted in January 2021 and Father moved back into the home with Mother. At the end of the termination hearing, the district court heard arguments from the parties and took the matter under advisement.

On September 28, 2021, the court held a hearing by Zoom and announced its decision. The district court announced it was finding Mother unfit but noted that it could not find Father unfit because the evidence showed Father had "not had much an opportunity" to work toward reintegration with Mother due to his parole conditions. As a result, the district court explained it would reserve a final determination on Father's unfitness and a termination decision for both parents for six months to allow the parents a chance to work together toward reintegration. The district court explained several specific conditions of the reintegration plan that the parents would need to meet, one of which was for Father to remain compliant while on parole and avoid returning to prison. The district court memorialized its ruling in a written journal entry in December 2021 and set the next hearing for March 2022.

In January 2022, the State moved to advance the hearing because Father had violated his parole and was currently incarcerated. Father's counsel responded, objecting to advancing the hearing because he had been unable to speak to Father and argued that

advancing the hearing would violate Father's due process rights. The district court denied the State's request and rescheduled the hearing to April 2022.

At the April 2022 hearing, the district court began by clarifying that the State's motion to terminate parental rights was still pending final disposition but that the unfitness finding for Mother stood. Father appeared by Zoom because of his incarceration, but counsel explained that Father would remain incarcerated until "at least September [2022]," and that he wanted to keep working case plan tasks after his release. The parties presented no more evidence related to the parents' progress during the six-month period. After considering arguments from the parties, the district court announced that it was terminating Mother's and Father's parental rights.

Following the hearing, the district court entered a journal entry memorializing its findings and terminating Mother's and Father's parental rights on several statutory grounds, including: mental illness or deficiency of such duration or nature to render either parent unable to care for the children, K.S.A. 38-2269(b)(1); physical abuse or neglect, K.S.A. 38-2269(b)(4); conviction of a felony and imprisonment, K.S.A. 38-2269(b)(5); failure of reasonable efforts made by appropriate agencies to rehabilitate the family, K.S.A. 38-2269(b)(7); lack of effort to adjust the circumstances, conduct, or conditions to meet the children's needs, K.S.A. 38-2269(b)(8); and one or more factors listed in K.S.A. 38-2269(c) applied as a result of actions or inactions by the parents and the children were in State custody for 15 of the most recent 22 months, K.S.A. 38-2269(b)(9). The district court's order also found that termination was in the best interests of the children. Mother and Father timely appealed, and the cases have been consolidated on appeal.

ANALYSIS

Parents argue that the evidence was insufficient to justify termination of their parental rights. Mother's brief focuses on her claim that she completed or at least showed progress on most of her case plan tasks. Father's brief focuses on his claim that he did not receive sufficient time to complete case plan tasks because of his parole violation, and the district court erred in finding him unfit for this reason. The State argues that it presented clear and convincing evidence that both parents were unfit by reason of conduct or conditions that were unlikely to change in the foreseeable future and that termination of parental rights was in the best interests of the children.

Kansas law requires that a district court must find "by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 38-2269(a). When reviewing a finding of parental unfitness, an appellate court must determine, after reviewing all the evidence in a light most favorable to the State, whether a rational fact-finder could have found the determination to be highly probable, i.e., by clear and convincing evidence. See *In re B.D.-Y.*, 286 Kan. 686, 705-06, 187 P.3d 594 (2008); *In re K.P.*, 44 Kan. App. 2d 316, 318, 235 P.3d 1255 (2010). In making this determination, an appellate court cannot reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. at 705.

The KCCC lists nine nonexclusive factors a district court must consider when determining parental unfitness. K.S.A. 38-2269(b). The existence of any one of the statutory factors standing alone may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 38-2269(f).

*The record reflects by clear and convincing evidence that Mother was unfit.*

Mother contests the district court's unfitness findings without specifically addressing any of the statutory factors of unfitness in the district court's ruling. While we could summarily affirm the district court's parental unfitness findings for Mother based on her failure to adequately brief the issues, we choose to address this point on the merits because of the importance of the issues at stake. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (we consider issues not adequately briefed to be waived or abandoned). In addition, even though the district court relied on several statutory factors, we need only conclude there was clear and convincing evidence to support a single factor to uphold the district court's unfitness finding. See K.S.A. 38-2269(f).

According to Mother, the totality of the evidence presented at the termination hearing shows the evidence was insufficient to support the district court's findings. She points to several instances during the testimony from the State's witnesses suggesting she: (1) remedied the case workers' concerns about cleanliness in the home; (2) followed most of the case plan tasks; and (3) shared an affectionate relationship with her children.

Mother essentially asks us to reweigh the extensive evidence offered by the State in support of its motion for termination, which we will not do. See *In re B.D.-Y.*, 286 Kan. at 705. Although the district court found several statutory factors that established Mother was unfit, the prevailing factor based on the record appears to be Mother's mental deficiency resulting from a traumatic brain injury which rendered her unable to care for her children's needs. See K.S.A. 38-2269(b)(1). Similarly, this fact also resulted in a failure of reasonable efforts by the appropriate agencies to rehabilitate the family. See K.S.A. 38-2269(b)(7). The district court also found a lack of effort by Mother to adjust her circumstances, conduct, or conditions to meet the children's needs. See K.S.A. 38-2269(b)(8).

6

The evidence shows the State first removed the children from Mother's care and initiated CINC proceedings based on reports of neglect and malnourishment of the children and poor living conditions. These concerns persisted throughout the case, despite repeated reminders from case workers. For example, Lindsay Metcalf—the case manager from intake to April 2020—testified that Mother continually struggled with cleaning the home and did not seem to understand that she needed to do things like remove trash from the home, clean dishes that had been piling up, clean countertops, and take care of the child safety and health concerns existing in the home. Erin Welch—the case manager from June 2020 to February 2021—echoed these same concerns, adding that the house was "getting better" but was still cluttered.

The case workers also testified that Mother struggled with understanding proper nutrition for the children and applying parenting strategies taught to her during parenting classes. According to Metcalf and other witnesses, Mother arrived to supervised visits unprepared and needed constant help understanding what foods to bring for the children and cleaning up after them. Mother kept trying to spoon feed both children, despite both children progressing to feeding themselves while in placement. Metcalf also testified that the case workers wanted Mother to focus on gaining parenting skills and improving her home, but instead "her focus always seemed to be on keeping her husband [Father] happy."

Before the children were removed from Mother's home, the case workers observed signs of poor hygiene, malnutrition, and improper living conditions. In the two years the case was pending, Mother did not sufficiently progress according to the case providers to allow the children to be placed into Mother's home. Put simply, after viewing this evidence in the light most favorable to the State, we find there is clear and convincing evidence in the record to support the district court's findings that Mother was unfit and that her unfitness was unlikely to change in the foreseeable future.

*The record reflects by clear and convincing evidence that Father was unfit.*

Father similarly argues that the totality of the evidence shows he complied with most of the case plan tasks that were given to him. He asserts that the findings of unfitness related to Mother extended to incidents occurring only while the children were solely in her care, and he points out that once his parole conditions were changed so that he could live with Mother, the parents began making progress at achieving reintegration. Thus, he contends the district court's only justification for finding him unfit and terminating both of their parental rights stemmed from his incarceration on a parole violation because it prevented him from continuing to work toward reintegration.

To start, Father asserts briefly that the district court's failure to make any findings of unfitness related to him is a sufficient basis for reversing the termination of his parental rights. Contrary to his assertion, the district court's written ruling listed several statutory factors to find both Mother and Father unfit, including: K.S.A. 38-2269(b)(1), (b)(4), (b)(5), (b)(7), (b)(8), and (b)(9). Despite recognizing the district court's lack of specificity about whether each factor applied equally to both parents, Father did not contest the adequacy of these findings below or otherwise ask the district court to make additional findings. "Without an objection, this court will presume the district court made all the necessary factual findings to support its judgment, though this court may consider a remand if the lack of specific findings precludes meaningful appellate review." *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, Syl. ¶ 14, 509 P.3d 1211 (2022). Put simply, we find that appellate review of the district court's statutory findings of unfitness is not precluded by the district court's lack of specificity in its ruling.

Father challenges the district court's finding of unfitness based on his felony conviction and incarceration as if that were the only factor that applied to him. As support, Father analogizes his case to *In re T.H.*, 60 Kan. App. 2d 536, 494 P.3d 851, *rev. denied* 314 Kan. 855 (2021). In that case, the primary issue was whether Father's

8

incarceration alone could be an automatic basis for a finding of parental unfitness, despite substantial evidence showing his efforts at maintaining a relationship with his child, providing support, and complying with case plan tasks as best he could from prison. This court determined that incarceration alone is not an automatic basis for a finding of parental unfitness and that the facts of each case dictate how a court should view the incarceration of a parent. 60 Kan. App. 2d at 549-55.

The facts in Father's case are substantially different from the facts in *In re T.H.* Father was convicted of attempted aggravated indecent liberties with a child in Johnson County in December 2006 and attempted sexual exploitation of a child in Labette County in July 2010. The State's motion for termination of parental rights alleged that a no-contact order was put in place in January 2019 after a neighbor witnessed Father hit Mother during a loud argument. Father moved back into the home in January 2021 when the no-contact order was lifted, and both parents made progress toward case plan tasks. The district court at first reserved a final determination of Father's unfitness for six months to give him more time to work toward reintegration. One of the conditions was for Father to remain compliant while on parole and avoid returning to prison. Father squandered this opportunity and returned to prison for an indefinite amount of time on a parole violation.

R.S. and C.S. were solely in Mother's care when the State filed the CINC petitions and for most of the case until the State filed for termination of parental rights. Several witnesses testified that Father did not obtain suitable housing for most of the case because he was living in a men's shelter until around January 2021. Although witnesses testified that the cleanliness of the home was "getting better" after Father moved back into the home once the no-contact order was lifted, the case workers still had some concerns with clutter around the home. Nor did the situation improve enough for the parents to move past monitored home visits with the children before the State moved for termination.

There is nothing in the record to show any sort of preparation by Father to ensure the proper care of his children during his incarceration. Father's inability to comply with parole conditions affected his ability to parent his children because Mother was unable to provide them adequate care. The children were removed from her care due to neglect and malnourishment while Father was not allowed to live in the home or be around Mother because of a parole condition. Father fails to recognize that his own actions created a situation for these serious concerns to occur, and there is clear and convincing evidence in the record showing he failed to adjust his circumstances to prevent them from occurring.

When viewed in the light most favorable to the State, clear and convincing evidence supports the district court's findings of unfitness as to Father based on his felony conviction and incarceration, a failure of reasonable efforts to rehabilitate the family, and a lack of effort on Father's part to adjust his circumstances, conduct, or conditions to meet the needs of the children. Likewise, because Father was expected to remain incarcerated for at least five more months after the final hearing, there was clear and convincing evidence to support the finding that Father's unfitness was unlikely to change within the foreseeable future.

*Did the district court abuse its discretion by concluding that termination was in the best interests of the children?*

After making a finding of unfitness, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 38-2269(g)(1). In making such a decision, courts shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 38-2269(g)(1). We review a district court's best-interests determination for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d 1105, 1115-16, 336 P.3d 903 (2014).

10

The district court made the necessary best interests of the children finding in its written ruling, which states: "Considering the physical, mental or emotional health of the child[ren], termination of parental rights is in the best interests of the child[ren] named above and the physical, mental or emotional needs of the child[ren] would best be served by termination of parental rights." And the district court's comments at the April 2022 hearing make clear that it considered the best interests of the children when making its termination decision. The district court explained that Father's incarceration on a parole violation in January 2022 meant he would be out of the children's lives for at least nine months by the time he was released. The district court had hoped Father could remain out of prison to show he could work with Mother—despite her unfitness—to parent the children as a unit, but that proved not to be possible. As for the children, the record reflects that they were placed together in a home throughout the case, and the placement provider testified at the termination hearing that they were doing well and showing substantial improvement. The most recent permanency plan for the children is still adoption.

The district court's best interests finding was supported by the evidence presented at the termination hearing. We conclude the district court did not abuse its discretion in finding that termination of Mother's and Father's parental rights was in the best interests of the children.

Affirmed.